**United States Court of Appeals**
**FOR THE EIGHTH CIRCUIT**
No. 97-1139

| | |
|---|---|
| Jessie Lee Wise, | * |
| | * |
| Appellant, | * Appeal from the United States |
| | * District Court for the |
| v. | * Eastern District of Missouri. |
| | * |
| Michael Bowersox, Supt., PCC, | * |
| | * |
| Appellee. | * |

—————————

Submitted:  December 8, 1997
Filed:  February 20, 1998

—————————

Before BOWMAN, LOKEN, and HANSEN, Circuit Judges.

—————————

BOWMAN, Circuit Judge.

Jessie Wise was convicted of first-degree murder and sentenced to death in a Missouri state court.  The evidence showed that he attacked Geraldine McDonald without provocation and beat her to death with a pipe wrench on August 27, 1988.  Over the next two days he burglarized her home, where he had killed her, and stole her money, her car, and her jewelry, some of which he pawned and some of which he traded for cocaine.  The postconviction court denied his motion for relief.  In an opinion combining review of the issues raised in Wise's direct appeal and the issues raised in his postconviction motion, the Supreme Court of Missouri unanimously affirmed his conviction and sentence.  The facts of the case are detailed in that court's opinion, <u>State</u>

v. Wise, 879 S.W.2d 494, 501-02 (Mo. 1994) (en banc), cert. denied, 513 U.S. 1093 (1995). Following his unsuccessful appeal, Wise petitioned for a writ of habeas corpus under 28 U.S.C. § 2254 (1994). The District Court[1] denied his petition without holding an evidentiary hearing, and Wise now appeals. We review decisions on questions of law de novo, see Culkin v. Purkett, 45 F.3d 1229, 1232 (8th Cir.), cert. denied, 116 S. Ct. 127 (1995), but we presume that state-court findings of fact, if made after a fair hearing and supported by the record, are correct. See 28 U.S.C. § 2254(d) (1994).[2] For the reasons that follow, we affirm the District Court's denial of Wise's petition for habeas corpus.

Wise first argues that the trial court erred in permitting him to represent himself. A criminal defendant has the right to an attorney, but he also has the constitutional right to waive that right and to act as his own lawyer. See Faretta v. California, 422 U.S. 806, 807 (1975). In this case Wise chose to exercise his right to defend himself. He represented himself in the guilt phase of his trial, following which he was convicted of first-degree murder, but decided to be represented by counsel in the sentencing phase. Now he argues that the trial court was wrong to grant him his wish for self-representation in the guilt phase of his trial.

---

[1]The Honorable George F. Gunn, Jr., United States District Judge for the Eastern District of Missouri.

[2]Subsequent to Wise's petitioning for the writ, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214. This act, inter alia, tightens the standards applicable to federal-court review of applications for writs of habeas corpus filed under § 2254 by state prisoners. See 28 U.S.C.A. § 2254(d) (Supp. 1997). Wise contends that the act does not apply to his case; the state does not address the question. We need not decide whether the Antiterrorism Act applies to this case because we conclude that, even applying the standard of review that was the law before the act, Wise's petition for habeas corpus should be denied.

Because a defendant has the constitutional right to an attorney, if he does not effectively waive that right, yet is put to trial without the assistance of counsel, his conviction and punishment violate due process. See Faretta, 422 U.S. at 818 (holding that the Sixth Amendment right to an attorney is part of the "due process of law" that the Fourteenth Amendment prohibits states from infringing). Before a defendant may waive the right to counsel, the trial court must determine that he is competent to stand trial and that he is knowingly and voluntarily waiving his right. See Godinez v. Moran, 509 U.S. 389, 400 (1993). That is all the trial court must find. It need not find that the defendant can conduct his defense effectively or as effectively as an attorney. See id. at 399-400. Thus, while Wise supports his claim that he should have been denied self-representation by pointing out that he wished to present a patently incredible conspiracy theory as his defense (his theory implicated the victim's husband, the police, the prosecutors, and the public defenders in both the murder and an alleged plot to frame Wise for the crime), a poor defense theory alone does not prove that a defendant should not have been allowed to waive the right to counsel.[3] A defendant may effectively waive the right to counsel as long as the two requirements stated in Godinez are satisfied.

Wise claims that the trial court ruled that he could represent himself without first inquiring into his competence to stand trial. A defendant is competent to be tried if he has "sufficient present ability to consult with his lawyer with a reasonable degree of

---

[3]Besides, it is by no means clear that Wise would have been better off with the insanity defense his attorneys wished to employ. See Weekley v. Jones, 76 F.3d 1459, 1463 (8th Cir.) (en banc), cert. denied, 117 S. Ct. 269 (1996) (stating that "there is considerable empirical evidence that insanity pleas in and of themselves are not received favorably by jurors" and "Missouri law puts some formidable and carefully wrought impediments in the way of a defendant" who hopes to succeed with an insanity defense).

rational understanding"[4] and "a rational as well as factual understanding of the proceedings against him." Dusky v. United States, 362 U.S. 402 (1960) (per curiam) (internal quotation marks omitted). During pretrial proceedings on May 11, 1990, Wise moved to represent himself. The trial court then conducted a hearing on his competence. In this hearing, the court questioned Wise about his mental health, his educational background, his legal knowledge, his understanding of the charges against him, and his appreciation of the risks and burdens of self-representation. At the conclusion of the hearing, the court stated that "the Court has had an opportunity to observe you [Wise] the three or four times that you've been here on various motions. And from my observation of you, both physically and by the nature of questions and answers that you gave . . . it's my belief that you're competent to proceed and you've made an intelligent choice to represent yourself." Respondent's Exhibit U at 45. Thus the court did find that Wise had a rational understanding of the proceedings against him and that he therefore was competent to be tried. The court did not quote the Dusky standard verbatim in making its finding, but it was not required to do so: "Trial judges are presumed to know the law and to apply it in making their decisions." Walton v. Arizona, 497 U.S. 639, 653 (1990). Wise has given us no reason to doubt that this presumption held true here.

Wise asserts that the trial court never determined that his waiver of the right to counsel was knowing and voluntary and, alternatively, that the record does not support this determination. Both assertions are incorrect. For a defendant knowingly and

---

[4]Justice Kennedy has explained how the ability rationally to consult with a lawyer is relevant to a case in which the defendant proceeds pro se: "Although the Dusky standard refers to 'ability to consult with [a] lawyer,' the crucial component of the inquiry is the defendant's possession of 'a reasonable degree of rational understanding.' In other words, the focus of the Dusky formulation is on a particular level of mental functioning, which the ability to consult counsel helps identify." Godinez, 509 U.S. at 403-04 (Kennedy, J., concurring in part and concurring in the judgment).

voluntarily to choose to represent himself, "he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open."  Faretta, 422 U.S. at 835 (internal quotation marks omitted).  In the competency hearing, Wise explicitly stated that "I knowingly and intelligently waive the right to counsel."  Respondent's Exhibit U at 26. Wise also filed a written request to waive counsel.  In this request, after acknowledging that he had the right to an attorney and that he might receive the death penalty, Wise concluded that "[k]nowing all of the above, it is my knowing and voluntary desire to waive my right to counsel and to proceed pro se as my own attorney."  Respondent's Exhibit D1 at 223-24. The trial court, moreover, did not take Wise's statements at face value. The court spoke with Wise at length about the dangers and disadvantages of self-representation, thus taking proper measures to ensure that Wise's waiver was in fact knowing and voluntary.  Finally, in ruling that Wise could proceed pro se, the court stated that it "hereby finds that the defendant's waiver is knowingly and intelligently made, with a full understanding of the risks of self-representation."  Respondent's Exhibit U at 45.  Thus the court did determine that Wise knowingly and voluntarily waived the right to counsel, and the record supports this determination.

Accordingly, because the trial court committed no error of law and because its factual findings are entitled to the presumption of correctness, a presumption Wise has failed to rebut, we hold that the trial court correctly permitted Wise to represent himself in the guilt phase of the trial.

Next Wise argues that the trial court deprived him of due process by letting him represent himself in a second competency hearing that was held on June 15 and June 28, 1990.  As we already have discussed, on May 11, 1990, Wise invoked his constitutional right to defend himself, and, after a thorough hearing on Wise's competence, the trial court properly permitted him to exercise that right.  Thus on June 15, 1990, Wise already properly was representing himself.  Wise did not request

the assistance of a lawyer for the second competency hearing (in fact he objected to the hearing altogether because he believed that he was competent and he was ready to start the trial), and the trial court correctly allowed him to continue pro se. Furthermore, although in this hearing both Wise and the prosecutor attempted to demonstrate Wise's competence, the contrary point of view also was well represented. The trial court held this hearing at the instigation of Wise's standby counsel, Timothy Braun, who had served as Wise's attorney until Wise exercised his right to represent himself, at which time the court ordered Braun to serve as standby counsel, ready to consult with Wise. Braun believed that Wise was incompetent, and he attempted to show this at the hearing. The court allowed Braun to speak and to examine both of the experts who testified. This hearing, like the hearing held one month before, was a fair inquiry into Wise's competence in which Wise was afforded due process.

Wise also claims that in the June 1990 competency hearing the trial court incorrectly found him competent to stand trial because the court applied the wrong legal standard for competence and because the record does not support the finding that he was competent. The conviction of an incompetent person violates due process. See Pate v. Robinson, 383 U.S. 375, 378 (1966). In this competency hearing the trial court found that Wise had a rational understanding of the proceedings against him, as Dusky requires. The court found that:

    a. Defendant was coherent and rational at all appearances.
    b. Defendant demonstrated a knowledge and understanding of each

            portion of the trial.
    c. Defendant demonstrated a knowledge of the factual allegations                        against
            him.
    d. Defendant demonstrated an understanding of the roles of his
                        attorney,
            the judge and the prosecuting attorney.
    e. Defendant demonstrated an ability to consult with his
        attorney . . .

Respondent's Exhibit D2 at 472-73. The record supports these findings. Two of the three experts who examined Wise concluded that he had no mental disease and that he was competent to be tried. In addition, the judge properly relied on his own observations of and conversations with Wise. For these reasons, Wise's claim must be, and is, rejected.

In another argument concerning the June 1990 competency hearing, Wise argues that the trial court should have conducted that hearing ex parte because the court knew that Braun planned to disclose confidential information, including aspects of Wise's conspiracy theory defense, in the hearing. Wise contends that Ake v. Oklahoma, 470 U.S. 68 (1985), required the court to conduct the hearing ex parte. Wise is incorrect. In Ake, the Supreme Court held that, if a defendant makes an ex parte showing that the question of his sanity at the time of the offense is likely to play a significant role in the trial, he is entitled to the assistance of a competent psychiatrist. See id. at 82-83. Ake did not hold that a defendant has the right to an ex parte competency hearing. Under Missouri law, moreover, parties have the right to cross-examine expert witnesses in competency hearings. See Mo. Rev. Stat. § 552.020.7 (1994). This would be impossible were those hearings conducted ex parte. Furthermore, the State points out that before the June 1990 competency hearing Wise already had disclosed much of the allegedly confidential information at issue. In a pretrial hearing on May 17, 1990, Wise stated in open court that he hoped to prove in the trial that the victim's husband committed the murder. In addition, in 1989 Wise filed two suits against the county prosecutor, an assistant public defender, and several police officers involved in the murder investigation, alleging that they conspired to violate his civil rights by framing him for the murder. The complaints in these suits described much of Wise's defense theory. Wise has not specified exactly what information he had not already disclosed before the June 1990 competency hearing. Thus even if, contrary to the law, a defendant were entitled to an ex parte competency hearing where confidential information might be disclosed, Wise has not shown that confidential information was

at stake here.  The trial court correctly did not conduct the second competency hearing ex parte.

Wise's next argument is that the trial court should have held yet another competency hearing at some point later in the proceedings (he mentions several different occasions) when he behaved irrationally.  A trial court must hold a competency hearing, on motion or sua sponte, "whenever evidence raises a sufficient doubt about the accused's mental competency to stand trial."  Reynolds v. Norris, 86 F.3d 796, 800 (8th Cir. 1996) (internal quotation marks omitted).  Wise contends that his competence was cast into doubt when he made some purportedly foolish decisions during the trial.  But bad trial tactics do not prove a defendant incompetent.  A defendant has the right to conduct his own defense to his detriment.  See Faretta, 422 U.S. at 834.  Having reviewed the record, we agree with the trial court, the Supreme Court of Missouri, and the District Court that Wise's performance during the trial was not such as to raise a doubt about his competence.  Accordingly, the trial court did not fall into constitutional error by failing to order a third competency hearing.

In his final argument based on his alleged incompetence, Wise contends that the trial court violated his right not to be a witness against himself, guaranteed by the Fifth and Fourteenth Amendments, by ordering him to submit to a psychological examination by Dr. Michael Armour in June of 1990.  Dr. Armour examined Wise to determine whether he was competent to stand trial.  He found that Wise was competent, and the trial court relied in part on his opinion when it found Wise competent in the June 1990 hearing.  Wise does not argue that information he disclosed to Dr. Armour was used against him in the trial.  More creatively, he argues that he refrained from disclosing certain information to Dr. Armour out of fear that it would be used against him in the trial; that if he had disclosed this information (including his defense theory) then Dr. Armour would have determined that he was incompetent; that the trial court would have agreed with Dr. Armour's assessment and therefore would not have allowed him

to be tried; and that, accordingly, his exercise of his Fifth Amendment right unlawfully worked to his detriment. This argument is meritless.

No violation of the privilege against self-incrimination arises from a trial court's ordering a defendant to undergo a psychological examination if the information gained in that examination is used solely to determine whether the defendant is competent to stand trial and not to show that the defendant is guilty or that he deserves a particular sentence. See Estelle v. Smith, 451 U.S. 454, 465 (1981). Following that reasoning, we hold that no violation of the privilege against self-incrimination occurs where a defendant's choice to remain silent in a psychological examination affects the determination that he is competent but not the determination that he is guilty or that he merits a certain sentence. Thus, even if we were to accept Wise's speculative argument that had he spoken more freely to Dr. Armour then Dr. Armour would have found him incompetent, this would not show that as a result of choosing to speak less freely to Dr. Armour he was deprived of his right not to incriminate himself.

Wise next contends that the trial court deprived him of the right to be confronted with the witnesses against him, in violation of the Sixth and Fourteenth Amendments, by limiting his cross-examination of prosecution witness Dexter Davis. Wise wished to examine Davis about several offenses for which Davis was "wanted" in order to suggest that Davis was testifying in exchange for immunity from prosecution for those violations. The trial court did not permit Wise to do so. "[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits [on cross-examination attempting to show that a prosecution witness is biased] based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986). The trial court did not exceed its "wide latitude" here. A party has no right to impeach a witness's credibility with evidence of "wanteds" or arrests. Wise, moreover, had no evidence that the prosecution had any knowledge of these wanteds (which were not even arrest

warrants), much less that the prosecution and Davis had struck some kind of deal.  Accordingly, Wise's proposed line of inquiry had little relevance to the case but could have been highly prejudicial.  The trial court did not abuse its discretion by restricting Wise's cross-examination of Davis.

Wise's last three arguments concern the sentencing phase of the trial.  First Wise contends that the trial court deprived him of his rights under the Sixth, Eighth, and Fourteenth Amendments by permitting the prosecution to introduce certain evidence related to and to make certain remarks about Wise's prior conviction for first-degree murder.  Wise was on parole from the sentence imposed on the prior murder conviction when he murdered McDonald.  He objects to the admission of the transcript of his guilty plea in the earlier case because that transcript referred to the victim as a family man and mentioned that Wise, when still a juvenile, had been convicted of other felonies.  Wise also objects to the prosecutor's having told the jury that Wise received mercy in the first case and that he therefore should receive no mercy now.  In addition, Wise complains that the jury could see some relatives of his first victim seated in the front row, weeping, during the sentencing phase.

In determining whether to sentence a defendant to death, a jury may consider  the defendant's prior crimes.  See Romano v. Oklahoma, 512 U.S. 1, 3 (1994) (upholding a death sentence where, in the sentencing phase, the prosecution had introduced evidence of the defendant's prior murder conviction).  We have upheld a death sentence imposed by a jury that viewed the defendant's videotaped confession to a prior murder of an elderly couple.  See Gilmore v. Armontrout, 861 F.2d 1061, 1072-73 (8th Cir. 1988), cert. denied, 490 U.S. 1114 (1989).  The evidence and remarks at issue here were just as relevant as and no more prejudicial than was that videotape.  The trial judge, moreover, properly handled the presence of the first victim's family members: when he saw them weeping, he declared a recess, removed the jury from the courtroom, and had the family members move to a location farther from the jury.  We

hold that the jury's exposure to information about Wise's prior conviction did not cause the violation of Wise's constitutional rights.

In his penultimate contention, Wise claims that the trial court violated his Sixth Amendment right to counsel by denying his attorney's request for a continuance prior to the sentencing phase. After representing himself in the guilt phase of his trial, Wise opted to be represented in the sentencing phase by his two standby attorneys. He did not make this decision until the jury started deliberating on his guilt at 12:05 P.M. on December 10, 1990. One of Wise's standby lawyers then requested that, if the jury returned its verdict that afternoon, the trial court declare a continuance so that he could have the entire next day to prepare for the sentencing phase. The court denied his request. The jury returned its verdict of guilty at 2:15 P.M. that day. Wise's lawyers then had until 9:00 the next morning to prepare for the sentencing phase. Had the continuance been granted, they would have gained twenty-four hours.

Wise's standby attorneys had been attending the trial, were familiar with the case, and had known of the possibility that they would be called upon to conduct the sentencing phase, so there is no reason to presume that this additional day would have made a difference in their performance. Accordingly, Wise bears the burden of showing that the denial of the continuance did negatively affect his lawyers' performance in the sentencing phase. Cf. United States v. Cronic, 466 U.S. 648, 658-60 (1984) (holding that a defendant alleging a violation of his right to counsel must prove that his lawyers performed ineffectively unless in the circumstances of the case "the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial"). Because Wise must show that the denial of the continuance resulted in his lawyers performing inadequately so as to violate his right to counsel, his argument on this point necessarily coalesces into his next, and final, argument, to which we now turn.

Wise contends that his lawyers ineffectively represented him in the sentencing phase, in violation of his right to counsel. We will reverse a death sentence for ineffective assistance of counsel only if the representation was constitutionally deficient and if the deficiency prejudiced the defendant. See Strickland v. Washington, 466 U.S. 668, 687 (1984). Representation is constitutionally deficient if "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. Constitutionally deficient representation prejudices a defendant if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. In Wise's postconviction relief hearing, his lead lawyer did not testify. According to Wise's other lawyer, who did testify at the postconviction hearing, the lead lawyer was responsible for the decisions made in the sentencing phase. Accordingly, in reviewing these decisions, we cannot know the thought processes of the lead attorney and we therefore must rely on the record of the sentencing phase. We bear in mind that "[j]udicial scrutiny of counsel's performance must be highly deferential." Id. at 689. Wise takes issue with several aspects of his lawyers' performance, each of which we will consider in turn.

Wise first asserts that his lawyers ineffectively assisted him because, as a result of the denial of the continuance, they did not sufficiently prepare for the sentencing phase. Even if it were true that they did not sufficiently prepare (a question we do not decide), inadequate preparation in itself does not prejudice a defendant. Wise must show that his lawyers' poor preparation resulted in a poor--and prejudicial-- performance. Thus, even assuming for the sake of argument that Wise's lawyers were unprepared, we will not grant Wise relief for this reason alone.

Next Wise argues that his lawyers should have given the jury more information about three subjects: Wise's troubled childhood, his poetry, and his aptitude for music. The record shows that the jury did hear about each of these subjects in some detail. We decline to second-guess Wise's attorneys by holding that they should have pursued

these subjects further, and we cannot say that pursuing them further would have given rise to a reasonable probability of a different result. Thus, these contentions fail.

Wise also argues that his lawyers should have elicited testimony that his personality changed for the worse when he abused cocaine. Wise contends that, since some evidence presented in the guilt phase showed that he used cocaine before he murdered McDonald, the jurors would have sympathized with him had they been told that he was a better person when he was not under the influence of cocaine. Wise has not shown that failing to elicit this testimony was so grave an error as to deprive him of his constitutional right to counsel, or even that it was an error at all. Even in the unlikely event that additional testimony was necessary to lead the jury to the unsurprising conclusion that cocaine negatively affected Wise, Wise's lawyers might reasonably have concluded that the jurors would not be more likely to sympathize with Wise if they were presented with testimony that drug abuse may have contributed to his crime.

Next Wise contends that his lawyers should have called Dr. William O'Connor to testify that Wise suffered from a mental disease. Wise's lawyers met with Dr. O'Connor shortly before the sentencing phase, and he told them he was willing to testify for Wise. They nevertheless chose not to call him. Wise has given us no reason to think that this was not a strategic decision made after meeting with Dr. O'Connor, and such decisions are "virtually unchallengeable" under Strickland. Id. at 690. We decline to question this decision here. The failure to call Dr. O'Connor did not deprive Wise of his right to constitutionally effective counsel.

Finally, Wise argues that his attorneys should have moved in the sentencing phase for another competency hearing. Wise has not shown that his lawyers fell short of the constitutional standard of conduct by not so moving, much less that he was prejudiced by this omission. Given that Wise already had been adjudicated competent not once but twice before the trial, that his performance in the trial did not cast his

competence into doubt, and that he has offered us no reason to think that he was less competent after the trial than before, we can only conclude that any motion for additional competency proceedings at the sentencing phase would have been doomed to likely, and appropriate, failure.

For the reasons stated above, we reject Wise's claim of ineffective assistance of counsel in the sentencing phase of his trial.

The District Court's denial of Wise's petition for a writ of habeas corpus is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.