# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-3970

_____

United States of America,　　　　　*
　　　　　　　　　　　　　　　　*
　　　　　Appellee,　　　　　　　*
　　　　　　　　　　　　　　　　*　　Appeal from the United States
　　　v.　　　　　　　　　　　　*　　District Court for the
　　　　　　　　　　　　　　　　*　　District of Minnesota.
George Gutierrez,　　　　　　　　*
　　　　　　　　　　　　　　　　*
　　　　　Appellant.　　　　　　　*

_____

Submitted: May 12, 2003

Filed:　December 18, 2003

_____

Before MORRIS SHEPPARD ARNOLD, HANSEN and SMITH, Circuit Judges.

_____

SMITH, Circuit Judge.

George Anthony Gutierrez seeks a new trial. Gutierrez, who represented himself below, contends that he should have been granted a new trial because the actions of his standby counsel deprived him of his right to self-representation.

Gutierrez also alleges the district court[1] committed several evidentiary errors which–when considered in aggregate–deprived him of a fair trial.[2] We affirm.

## I. *Background*
### A. *Search*

While a fugitive from Texas, Gutierrez was located by authorities in Burnsville, Minnesota. The officers obtained warrants to search Gutierrez's home and to arrest him. Police obtained the search warrant based upon a controlled buy of one-half ounce of cocaine at the residence earlier that day. A confidential informant, who was identified at trial, made the controlled buy. She was followed by officers to and from Gutierrez's residence. Other than Gutierrez and his wife, Valerie, no other adults lived in the home.

Gutierrez's home was searched pursuant to a search warrant on October 10, 2001.[3] The officers seized from Gutierrez's person: (1) a false Mexican driver's license in the name of Juan Antonio Leon Garza that displayed Gutierrez's picture; (2) an Oklahoma driver's license in the name of Georgio Gutierrez that displayed Gutierrez's picture; (3) approximately $750 in cash, $500 of which had been paid to Gutierrez by the informant during the controlled buy.

---

[1] The Honorable Ann D. Montgomery, United States District Judge for the District of Minnesota.

[2] Gutierrez also argues that the district court committed plain error by (1) allowing hearsay testimony; (2) permitting the government's expert to testify in violation of Federal Rule of Evidence 704(b); and (3) by failing to declare a mistrial, but instead issuing a corrective instruction to the jury, as a result of prosecutorial misconduct during rebuttal. Having carefully considered these arguments–all of which were not raised below–we conclude that none of these alleged errors, if proven, would constitute plain error. We affirm the district court without further discussion. *See* 8th Cir. R. 47B.

[3] Larry Forga, Gutierrez's father-in-law, rented the apartment for them.

Police collected numerous other items from the home. The officers found a fanny pack on Gutierrez's kitchen table. Inside the fanny pack were various documents with the Gutierrez name on them. There were also birth certificates of the Gutierrez's children. The officers also found two keys in the fanny pack. In addition, the officers seized a locked backpack. The keys in the Gutierrez's fanny pack were to the lock on the backpack. The police opened the backpack and found over 1,000 grams of methamphetamine, approximately 642 grams of cocaine, and some marijuana.

Officers also found a briefcase behind a couch. The following items were inside the briefcase: (1) identification in the name of Tony Gutierrez and Georgio Gutierrez, including a lease agreement to a storage facility in California, insurance card, and envelope addressed to Georgio Gutierrez;[4] (2) literature on creating false identities; (3) at least four notebooks and books, which contained detailed directions and instructions on how to make methamphetamine; (4) a loaded 9mm semi-automatic handgun with two magazines; (5) $4,000 in currency, in $1,000 bundles; (6) a number of photos of Gutierrez–including sheets of photos where one of Gutierrez's pictures was missing and the photo itself was identical to the photo on the Mexican driver's license. Lastly, a trained drug dog alerted to a large duffle bag in the master bedroom as containing cocaine.

While Gutierrez was being transported to jail, he asked the officer whether his wife was going to be arrested. The officer responded that the decision would be up to the deputies at the scene who were still investigating. Gutierrez then stated that the drugs and guns were his, that he would take full responsibility for them, and that his wife had nothing to do with them. At no time in his statement did Gutierrez indicate anyone else was responsible for the drugs.

---

[4] Gutierrez admitted that all three names–Tony, Georgio, and George–were his aliases.

During his booking, he again asked the deputy if his wife had been arrested and if his kids were safe. After learning that his wife had not been arrested, and that she was with the children, Gutierrez stated again that his wife had no role in the criminal activity.[5]

## B. *Faretta Hearing*

Although counsel was appointed, Gutierrez elected to represent himself. On January 9, 2002, Gutierrez appeared before a magistrate judge for the sole purpose of having the court determine if Gutierrez understood the ramifications of self-representation pursuant to *Faretta v. California*, 422 U.S. 806 (1975). At that time, the magistrate specifically advised Gutierrez that if convicted he would face twenty-five years' imprisonment. The magistrate further warned Gutierrez that unlike an attorney, Gutierrez lacked familiarity with the rules of evidence or procedure; that if Gutierrez proceeded to trial unrepresented, the court would not act as his advocate or provide him with advice; and that it would be difficult to attempt to try the case without the appropriate education and experience. The magistrate specifically told Gutierrez that in the court's opinion Gutierrez would be best served by having a trained lawyer represent him and that the decision to proceed without an attorney was "terribly unwise."

Prior to trial, the district court again advised Gutierrez concerning his right to an attorney. Among other things, the district court specifically advised Gutierrez of his right to have counsel at trial, that standby counsel had a different role than defense counsel, that the court would not be Gutierrez's lawyer, and that Gutierrez was charged with "various serious offenses." Gutierrez persisted in his decision to represent himself. Dean Grau, Esquire, acted as standby counsel (both at the trial and at the earlier suppression hearing).

---

[5] Gutierrez later testified that he took responsibility for the drugs and gun recovered from his apartment because he did not want his wife to get into trouble.

## C. *Trial*

At trial, Gutierrez stated that his father-in-law, Larry Forga, asked Gutierrez's wife to store the briefcase and backpack for Forga, and that she put those items in the apartment. Gutierrez stated that Valerie agreed to help her father because Forga was providing her with drugs for her personal use. Gutierrez acknowledged that he possessed various identification cards, each bearing different names, but all bearing his photograph. Gutierrez explained that his father-in-law had given him these identification cards. He admitted that police found various receipts and other documents bearing his aliases in the briefcase. He explained that the briefcase was Valerie's, and that she kept his paperwork–including the seized documents–for him.

Gutierrez denied knowledge of the drugs and the gun found in his home on October 10. When asked about the fanny pack, which contained the keys to the backpack, Gutierrez again pointed to his wife as the true owner. Gutierrez also claimed that the approximately $750 found on his person was, in part, from a tamale business Gutierrez ran with his wife.

The government rested its case early on the second day of trial. Gutierrez then moved the court for acquittal. The court denied his motion. To open his defense, Gutierrez told the court that he wished to call his wife as a witness. Valerie Gutierrez, through her counsel, explained to the court that "if called to the witness stand, she would assert her Fifth Amendment privilege." The court then excused Valerie Gutierrez. Gutierrez then told the court that he wanted "to get rid of [his] standby counsel." Gutierrez's request was based on the fact that Grau had referred Valerie to the Federal Public Defender's Office to obtain representation. Grau explained the situation to the court:

> MR. GRAU: Your Honor, yesterday following the sequestration order I mentioned, of course, to the witness that I couldn't really discuss what was going on here in the courtroom. She indicated to me something about what she wanted to testify to. In the process of her revealing it to

me I stopped her, told her that she really shouldn't talk to me about it, that she needed to consult her own counsel. She told me [that she] couldn't afford counsel. I asked Dan Scott [Federal Public Defender for the District of Minnesota] what we might do about it and Dan Scott appointed counsel. And I believe that Mr. Gutierrez is unhappy with me. I've tried to explain to him that the code of professional responsibility requires me to do what I did when I'm dealing with an unrepresented person, and Mr. Gutierrez's position is that what I did resulting in what just happened has I think gutted his defense and he indicates that he doesn't wish to have my services even as standby counsel anymore.

The court then advised Gutierrez that as an attorney Grau has an obligation "not to talk to any party that's unrepresented where it could implicate that party's right against self-incrimination." The court advised Gutierrez that it did not see how Grau violated his role as standby counsel, but that the court would be willing to release Grau as standby counsel if Gutierrez so wished. The court gave Gutierrez some time to think it over, and after a recess, Gutierrez decided that he wanted Grau to remain.

The court found that Mrs. Gutierrez had a Fifth Amendment right that she lawfully asserted based upon the advice of her counsel; thus, she could not be called as a witness. Gutierrez made an offer of proof stating what–he believed–his wife would have testified if called as a witness. Gutierrez asserted, in essence, that Valerie Gutierrez would have inculpated herself and her father in order to exonerate Gutierrez.

The next day at trial, Gutierrez again sought to call his wife as a witness. Significant to Gutierrez's argument that Grau interfered with his right to represent himself, the following colloquy occurred among the court, Gutierrez, standby counsel, and proposed witness Valerie Gutierrez:

THE COURT: Who will you be calling next?

MR. GUTIERREZ: [Valerie] Maria Gutierrez.

THE COURT: All right. Has that situation changed with regard to her Fifth Amendment Rights?

MR. GRAU: I know nothing about it, your Honor. The last I heard was Mr. Ostgard was her attorney here in the courtroom. That's everything I know. So if he is turning to me to answer the question, I don't know.

THE COURT: Mrs. Gutierrez, have you changed your mind about your Fifth Amendment Right?

MRS. GUTIERREZ: Yes, I have.

THE COURT: Have you talked to your attorney?

MRS. GUTIERREZ: I couldn't reach him this morning.

THE COURT: I am not going to let you testify without conferring with Mr. Ostgard.

MR. GUTIERREZ: But, your Honor, she doesn't want her attorney.

THE COURT: I am going to be talking to her. She has rights beyond your rights at this point.

MR. GUTIERREZ: Okay.

THE COURT: We will take a 15-minute recess and I will ask, Mrs. Gutierrez, that you stay on this floor. We will consult with Mr. Ostgard and get him over here. The Court will be in recess for 15 minutes.

(Recess)

THE COURT: Mrs. Gutierrez, I am not going to let you testify without the advice of counsel. So they are going to take you downstairs to the federal public defender's office to await the arrival of counsel.

-7-

Because Mr. Ostgard was not available, the Federal Public Defender's Office obtained another attorney for Valerie Gutierrez. After consulting with her new attorney, Valerie Gutierrez again decided to assert her Fifth Amendment right. The court excused her. The jury convicted Gutierrez, and the district court sentenced him to 300 months' imprisonment.

## II. *Discussion*

As a preliminary matter, we note that the decision to grant or deny a mistrial is within the discretion of the district court, and the decision will be reviewed only for an abuse of that discretion. *United States v. Encee*, 256 F.3d 852, 854 (8th Cir. 2001). We will affirm a district court's denial of a mistrial absent an "abuse of discretion resulting in clear prejudice." *United States v. Koskela*, 86 F.3d 122, 125 (8th Cir. 1996).

Gutierrez first argues that he is entitled to a new trial because his standby counsel inappropriately interfered with his right to represent himself by advising his wife that she should consult with her own counsel before testifying. This argument is without merit.

By operation of the rules for the United States District Court for the District of Minnesota, Local Rule 83.6, the Minnesota Rules of Professional Conduct are applicable to all attorneys practicing before the district court. Additionally, Rule 4.3 of the Minnesota Rules of Professional Conduct, dealing with unrepresented persons, provides:

> (c) During the course of representation of a client a lawyer shall not give advice to a person who is not represented by a lawyer, other than the advice to secure counsel, on those issues as to which the interests of each person are or have a reasonable possibility of being in conflict with the interests of the client.

-8-

Although Grau did not serve as defense counsel, he was appointed by the court to be available and to assist Gutierrez. He was functioning as an officer of the court. While Grau's role was limited to providing Gutierrez assistance when requested, that assistance must comport with Rule 4.3 of the Minnesota Rules of Professional Conduct. When Grau was approached by Gutierrez's wife concerning her possible role as a witness, under Rule 4.3 he was permitted–and arguably obligated–to advise Valerie Gutierrez to seek her own counsel.

Second, Gutierrez argues that because he is not a lawyer, he was not required to follow the Code of Professional Responsibility. Whether Gutierrez–as a pro se defendant–was subject to the Rules of Professional Conduct is immaterial. Standby counsel, Grau, assuredly was subject to them. Grau's recommendation that Valerie Gutierrez seek counsel of her own was entirely appropriate under the circumstances–infringing no rights of the defendant. The district court, not standby counsel, required Valerie Gutierrez to consult with counsel when called to testify the second time.

The right to self-representation does not detract from the authority of the court to conduct the trial. *McKaskle v. Wiggins*, 465 U.S. 168 *passim* (1984). A district court's decision to admit–or to exclude–evidence is reviewed under the abuse of discretion standard. *U.S. v. Chipps*, 299 F.3d 962, 966 (8th Cir. 2002). Absent an abuse of discretion, we will not interfere with the district court's authority in trial matters. *U.S. v. Yockel*, 320 F.3d 818, 827 (8th Cir. 2003). In particular, we do not consider it to be an abuse of discretion for the court to insure that a witness's rights are protected. For the foregoing reasons, we affirm the judgment of the district court.

MORRIS SHEPPARD ARNOLD, Circuit Judge, dissenting.

I respectfully dissent from the court's judgment because I think that Mr. Gutierrez's right to represent himself, *see Faretta v. California*, 422 U.S. 806 (1975), was interfered with when his standby counsel advised Mr. Gutierrez's wife to seek counsel. Mr. Gutierrez had the right to maintain "actual control over the case he cho[se] to put to the jury." *See McKaskle v. Wiggins*, 465 U.S. 168, 178 (1984). If standby counsel substantially interferes with "any significant tactical decisions" or "control[s] the questioning of witnesses," *id.*, he or she violates the defendant's Sixth Amendment right to conduct his or her own defense. Standby counsel's actions plainly did that here. If Rule 4.3 of the Minnesota Rules of Professional Conduct requires or allows counsel to act as he did, it is unconstitutional as applied to the present circumstances.

Rule 4.3, moreover, did not, as the court intimates, require Mr. Gutierrez's counsel to do what he did. At most, it might be interpreted to allow him to do so, but I believe that it does not even do that. First of all, the Minnesota Rule rather obviously evolved from Rule 4.3 of the ABA Model Rules of Professional Conduct (note the identical rule number), which is aimed at ensuring that lawyers do not respond to questions put to them by an unrepresented person or otherwise give such a person the impression that they are impartial. The present case does not involve that kind of activity.

Second, if the rule were interpreted to require or allow a lawyer to deflect Mrs. Gutierrez's intentions in the way that counsel did here, it would be unconstitutional for reasons that I have already indicated. It is a familiar rule of constitutional law that a construction of a statute or a rule that would render it unconstitutional is to be avoided if other reasonable constructions are possible, and I would apply that rule here. Construing the Minnesota Rule in the way that I propose would still leave a lot of room for its application. It might even be true that

-10-

construing Rule 4.3 as the court does would require standby counsel to do something that would violate Mr. Gutierrez's Sixth Amendment right to the effective assistance of counsel, though that is not a question that we need reach here. *Cf. Wise v. Bowersox*, 136 F.3d 1197, 1206 (8th Cir. 1998), *cert. denied*, 525 U.S. 1026 (1998).

Interpreting the rule in the way that the court does leads to the extraordinary conclusion that a lawyer has an ethical duty to act in a way that is contrary to the duty of loyalty that he owes to a party for whom the lawyer is operating as standby counsel. Such an interpretation ought to be avoided unless there is no reasonable alternative. Of course, I do not mean to intimate in the least that counsel here acted with an improper motive or for any reason other than a desire to abide by the Minnesota Rules. I would simply hold that he acted incorrectly, perhaps out of an abundance of zeal, but incorrectly nonetheless.

The actions of counsel interfered with Mr. Gutierrez's right to put the case on as he saw fit because he was deprived of a witness who was going to provide significantly exculpatory testimony for him. The court suggests, as an alternative, that it was not counsel but the trial judge that caused the witness not to testify. But we cannot know that, because we cannot know what the trial judge would have done if standby counsel had not given the advice in the first place. It is significant to me that Mrs. Gutierrez had already been advised by counsel to whom she was referred that she ought not to testify, had taken the advice, and then changed her mind, only to be told by the trial judge that she should seek counsel yet again. Given Mrs. Gutierrez's apparent willingness to testify on at least two occasions, it is a hazardous guess at best that she would not have testified when she first expressed an intention to do so but for counsel's intervention.

It bears emphasis that Mrs. Gutierrez had as much a right to give evidence as she did to withhold it. Neither Mr. Gutierrez nor his lawyer, moreover, could deny

her Fifth Amendment right to remain silent since neither was a government actor, and the right, of course, is secured only against state interference.

The government does not argue that the error here was harmless, and on this record I hesitate to say that it was.  I would therefore reverse the judgment and remand for a new trial.

_____