_____

No. 96-1574
_____

Thomas Miller,                          *
                                        *
   Petitioner - Appellant,              *
                                        *  Appeal from the United States
       v.                               *  District Court for the
                                        *  Western District of Missouri
Kelly Lock; Jay Nixon,                  *
                                        *
   Respondents - Appellees,             *
                             _____

                Submitted:  February 13, 1997

                Filed: March 11, 1997
                             _____

Before BOWMAN and WOLLMAN, Circuit Judges, and KOPF,[1] District
     Judge.
                             _____

KOPF, District Judge.


     Thomas Miller appeals from a district court[2] order denying his
petition for a writ of habeas corpus filed pursuant to 28 U.S.C.
§ 2254.  For reversal, Miller argues the district court erred in
finding that (1) there was sufficient evidence from which a jury
could find Miller guilty of first-degree arson; (2) trial counsel
was not constitutionally ineffective when counsel failed to procure
available evidence relevant to Miller's alibi defense; and (3)
Miller's claim that he was not informed by the sentencing court or
by trial, appellate, or postconviction counsel of the 30-day filing

_____

     [1]The Honorable Richard G. Kopf, United States District Judge
for the District of Nebraska, sitting by designation.

     [2]The Honorable Dean Whipple, United States District Judge for
the Western District of Missouri.

deadline for postconviction motions under Missouri Supreme Court Rule 29.15 was procedurally barred.  We affirm.

## I.  BACKGROUND

### A.  Facts

Orville and Waunita Steinert owned farm property located near Milan, Missouri, on State Highway OO.  The Steinerts lived in one half of a duplex on the property, and they intended to rent the other half to a state patrolman who was scheduled to move into the duplex on September 11, 1990. Miller drove onto the Steinert property on the afternoon of September 10, 1990, and told Mr. Steinert that he had come to appraise some trees.  Steinert replied that the trees were not for sale and Miller should leave.  Miller then became enraged, telling Steinert, among other things, that if Steinert's cattle came onto Miller's property, he would shoot them.  When Miller saw Steinert later the same day, Miller apologized for his actions.

Later the same afternoon, Miller visited the home of Danny Courtney, a local resident, who testified that Miller had been drinking quite a bit and was aggravated by his confrontation with Steinert earlier that day, although Miller was mostly angry at the men who had sent Miller to Steinert's property.

Courtney then drove Miller to a tavern where Miller began talking to Joe and Lois Judd.  Lois Judd testified that at approximately 8:00 that evening, Miller told her and Joe Judd that Miller was going to do them a "big favor" by burning a house located on Highway OO into which a patrolman was going to move because Miller did not want a patrolman living on Highway OO, which was the route Miller used to drive home after he had been drinking.  Lois Judd testified that around 9:00 p.m. Miller seemed to realize he had "said too much" and then offered to pay for the Judds'

dinner.  Miller then left the tavern and returned an hour later, smelling like diesel fuel.  Other witnesses who were at the tavern that

night stated that Miller did not leave the tavern until 10:15 or 10:30 p.m.

Meanwhile, Mr. Steinert was watching Monday Night Football on television after having taken a shower during halftime. Around 9:30 or 10:00 p.m., Mr. Steinert smelled an odor like kerosene or diesel fuel and smoke began rolling into the living room from the hallway. Steinert and his wife left the house, and after Steinert's unsuccessful attempt at dousing the fire with water, the couple drove one-half mile to the home of Terry Jones where they called the fire department. Jones heard a "loud noisy car . . . or a truck" drive by his house shortly before the Steinerts arrived.

Sometime after the fire department had arrived at the scene, two men went to the duplex to watch the fire. Miller drove up in a Blazer or Bronco truck, approached the men, and opined that the fire appeared to have started in the west end of the house. However, by that time one-half to two-thirds of the duplex had burned, making it hard to determine where the fire may have started.

The next morning Miller phoned Lois Judd and said "if you don't keep your mouth shut you're going [to] keep me in trouble." Miller also said he did not mean the things he said the night before and he did not burn anything.

An arson investigator concluded that the fire had been intentionally set in the northwest bedroom of the duplex with some sort of flammable liquid. He noted that flammable liquids will flare up when water is applied, consistent with Mr. Steinert's experience when he tried to extinguish the fire.

**B. Procedural History**

Following a jury trial, Miller was convicted of one count of first-degree arson and sentenced to 10 years in prison. Miller's

conviction and sentence were affirmed on direct appeal.  State v. Miller, 839 S.W.2d 27 (Mo. Ct. App. 1992).  Miller then filed a motion for postconviction relief which was dismissed by the Missouri circuit court as being untimely, and the dismissal was affirmed on appeal on the same ground.  Miller v. State, 869 S.W.2d 894 (Mo. Ct. App. 1994).  The United States District Court for the Western District of Missouri denied Miller's 28 U.S.C. § 2254 petition for a writ of habeas corpus.

## II.  DISCUSSION

We review the district court's conclusions of law de novo and its findings of fact for clear error.  McDonald v. Bowersox, 101 F.3d 588, 592 (8th Cir. 1996).[3]

### A.  Sufficiency of Evidence

Miller first argues that the district court erred in finding sufficient evidence to support Miller's conviction for first-degree arson when various witnesses placed Miller at the tavern at the time the fire was set.

In determining the sufficiency of evidence to support a conviction, "the relevant question is whether, after viewing the

---

[3]In considering Miller's claims, the State argues that we should apply the standard of review set forth in 28 U.S.C. § 2254(d) and (e), as amended on April 24, 1996, by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, Title I, § 104, 110 Stat. 1218.  However, this court has not yet decided whether the section 2254 amendments apply to cases that were pending on April 24, 1996.  We leave consideration of the State's argument to another day because Miller's claims either fail under the standards applied prior to the Act or are procedurally barred.  Preston v. Delo, 100 F.3d 596, 599 n.4 (8th Cir. 1996).

evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of

the crime beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original).  The evidence in this case was clearly sufficient to enable a trier of fact to find that Miller knowingly damaged a building or inhabitable structure when any person was present by starting a fire and thereby recklessly placing such person in danger of death or serious physical injury. See Mo. Ann. Stat. § 569.040 (West 1979 & Cum. Supp. 1997) (crime of first-degree arson).  The fact that some witnesses placed Miller at a tavern during the time the fire occurred is of no consequence, as it was for the jury to determine witness credibility.  Meadows v. Delo, 99 F.3d 280, 282 (8th Cir. 1996).  Therefore, the evidence is sufficient to sustain Miller's conviction.

## B.  Ineffective Assistance of Trial Counsel

Miller next argues that trial counsel was constitutionally ineffective when counsel failed to procure available evidence relevant to Miller's alibi defense.  Although in his postconviction motion Miller sought to raise trial counsel's ineffectiveness in preparing and presenting an adequate defense, the motion was denied as being untimely under Mo. S. Ct. R. 29.15.[4]  "The failure to file a timely motion for post-conviction relief in the state court is a procedural default that will bar habeas review absent cause and prejudice," which Miller has not shown here.  Griffini v. Mitchell,

---

[4]On November 2, 1992, the date Miller filed his postconviction motion, Mo. S. Ct. R. 29.15(b) provided in relevant part:

> If an appeal of the judgment sought to be vacated, set aside or corrected was taken, the motion shall be filed within thirty days after the filing of the transcript in the appeal pursuant to Rule 30.04.  If no appeal of such judgment was taken, the motion shall be filed within ninety days of the date the person is delivered to the custody of the department of corrections.

Mo. S. Ct. R. 29.15(b) (1992).

31 F.3d 690, 692 (8th Cir. 1994) (citing <u>Wainwright v. Sykes</u>, 433 U.S. 72, 87 (1977)).

To the extent Miller's 28 U.S.C. § 2254 petition can be construed as alleging ineffective assistance of counsel in failing to advise Miller of the deadline for filing postconviction motions under Mo. S. Ct. R. 29.15 as cause for the procedural default, this claim is also without merit because before a claim of ineffective assistance of counsel can constitute cause, both the factual grounds and legal theories on which the claim is based must have been presented to the highest state court in order to preserve the claim for federal review. Krimmel v. Hopkins, 56 F.3d 873, 875-76 (8th Cir.), cert. denied, 116 S. Ct. 578 (1995); Flieger v. Delo, 16 F.3d 878, 884-85 (8th Cir.), cert. denied, 115 S. Ct. 355 (1994).

Miller did not present on postconviction appeal a constitutional ineffective assistance of counsel claim based on trial, appellate, or postconviction counsel's failure to advise him of the 30-day deadline for filing a postconviction motion under Mo. S. Ct. R. 29.15 when an appeal has been taken. Rather, Miller's sole argument on postconviction appeal was that Mo. S. Ct. R. 29.15 was unreasonable and made no exception for good cause, thereby violating Miller's due process rights. Miller's only mention of counsel on postconviction appeal was in the context of his argument that the timing provisions in Mo. S. Ct. R. 29.15 were unfair, especially in a situation where counsel leads a defendant to believe that the defendant's interests will be protected, as was promised to Miller in this case. Thus, this claim is procedurally defaulted.

## C. Ineffective Assistance of Counsel Regarding Postconviction Motion Filing Deadline

Miller argues that neither the sentencing court nor his trial, appellate, and postconviction counsel advised him that his postconviction motion must be filed within 30 days after filing of

the transcript in the event an appeal was taken. Therefore, Miller argues, counsel were constitutionally ineffective in failing to advise him of this deadline and in neglecting to present this issue in postconviction proceedings.

For the reasons discussed above with regard to Miller's ineffectiveness of trial counsel claim, this claim is also procedurally barred. To the extent Miller's claim addresses the alleged ineffectiveness of postconviction counsel, this claim fails because Miller is not constitutionally entitled to counsel in state postconviction proceedings. There can be no denial of effective assistance of postconviction counsel when there is no constitutional right to postconviction counsel in the first instance. Coleman v. Thompson, 501 U.S. 722, 752 (1991); Cassell v. Norris, 103 F.3d 61, 62 (8th Cir. 1996).

### III.  CONCLUSION

We hold the district court did not err in denying Miller's petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254.

Accordingly, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-13-