# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 96-2441

_____

Heath Allen Wilkins,     *
    *
      Petitioner-Appellee,     *
    *
                           *     Appeal from the United States
     v.                      *     District Court for the
                            *     Western District of Missouri.
Michael Bowersox,     *
    *
      Respondent-Appellant.     *

_____

Submitted: March 10, 1997

Filed: June 8, 1998

_____

Before McMILLIAN and HANSEN, Circuit Judges, and MAGNUSON,[1] District
     Judge.

_____

HANSEN, Circuit Judge.

---

[1]The Honorable Paul A. Magnuson, Chief Judge, United States District Court for the District of Minnesota, sitting by designation.

The Superintendent of the Potosi Correctional Center in Mineral Point, Missouri, Michael Bowersox (Respondent), appeals from the judgment of the district court[2] granting Heath Allen Wilkins' petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (1994). In 1986, Wilkins pleaded guilty to first-degree murder and received a death sentence from a Missouri state trial court. The district court granted the writ on multiple grounds, including the court's belief that Wilkins' waiver of counsel, his guilty plea, and his waiver of the right to present mitigating evidence were not entered into knowingly, intelligently, and voluntarily. Wilkins v. Bowersox, 933 F. Supp. 1496 (W.D. Mo. 1996). We affirm.

## I.

From infancy through his teenage years, Wilkins suffered severe physical and emotional abuse at the hands of his mother and other adults in his life. He began abusing drugs as a kindergartner on his way to school. At the age of 10, he became a ward of the state as a result of his involvement in a burglary. A mental health evaluation at that time described Wilkins as a severely depressed boy with homicidal and suicidal tendencies. During the years that followed, he was transferred in and out of mental health facilities. By the age of 16, Wilkins was living on the streets with three other teenagers.

On July 27, 1985, at the age of 16, Wilkins and his three teenaged companions robbed a liquor store and delicatessen in Avondale, Missouri, and committed a murder during the course of the robbery. According to their plan, which the record shows was primarily formulated by Wilkins, one of Wilkins' companions grabbed the woman working behind the counter, Nancy Allen, and held her while Wilkins viciously

---

[2]The Honorable Scott O. Wright, United States District Judge for the Western District of Missouri.

2

inflicted multiple, fatal stab wounds. A few weeks later, the Kansas City Police Department arrested Wilkins and his accomplices.

After questioning by the police, Wilkins confessed to the murder and robbery. A juvenile court, after denying a defense motion for a mental examination, determined that Wilkins could be tried as an adult. At the arraignment, Wilkins' court-appointed counsel, Fred Duchardt, entered pleas of not guilty and not guilty by reason of mental disease or defect. Pursuant to that plea, the Missouri trial court ordered Dr. Steven Mandracchia, a psychologist at the Western Missouri Mental Health Center, to examine Wilkins. Dr. Mandracchia initially examined Wilkins on November 27, 1985, and concluded in his subsequent written report that Wilkins was competent to stand trial and that at the time of the offense, Wilkins was not suffering from a mental disease or defect within the meaning of the Missouri statute. (J.A. at 908-14.)

In January 1986, Wilkins informed Mr. Duchardt that he wished to be executed, which prompted Mr. Duchardt to have Wilkins examined a second time. In March 1986, Dr. William Logan, a psychiatrist at the Menninger Foundation, examined Wilkins and found that although Wilkins' mental state at the time of the crime did not meet the legal criteria for insanity under Missouri law, he believed that Wilkins suffered from a mental disease and that his mental functioning was significantly impaired. (Id. at 930.) Dr. Logan did not make a conclusive finding regarding Wilkins' competency to stand trial, but he wrote that "emotional issues may prevent him from acting in his own best interests." (Id. at 928.)

On April 16, 1986, the Missouri trial court conducted a competency hearing at which both Dr. Mandracchia and Dr. Logan testified. Dr. Mandracchia reiterated his earlier findings, explaining that he interviewed Wilkins for approximately 95 minutes and believed that he was competent to stand trial. Dr. Logan's testimony was also consistent with his earlier report. He stated that Wilkins was "psychiatrically ill" with a "plethora of mental difficulties" and was a "very impulsive individual who really

3

doesn't think through the consequences of some of his decisions." (Id. at 627, 637.) Dr. Logan, however, did not make an express finding regarding Wilkins' competency to stand trial. At the competency hearing, neither Dr. Mandracchia nor Dr. Logan offered opinions on Wilkins' capacity to make a knowing, intelligent, and voluntary decision to be executed or to waive constitutional rights. At the conclusion of the testimony, the court found Wilkins to be competent to proceed to trial.

Immediately after the court judged Wilkins competent to stand trial, Wilkins stated that he wished to waive his right to counsel and proceed pro se, because he desired to receive a death sentence and his lawyer would not help him get the death penalty. The court postponed a determination on Wilkins' request and set a hearing date for one week later. On April 23, 1986, after some brief questioning by the court, the court accepted Wilkins' waiver of counsel. The court appointed Mr. Duchardt as "standby counsel" to act as a resource person for Wilkins when and if Wilkins called on him. Wilkins then informed the court that he wished to plead guilty to all of the charges against him. The court deferred action on the proposed guilty plea until May 9, 1986.

At the May hearing, the court questioned Wilkins regarding his decision to plead guilty and encouraged him to accept the assistance of counsel. Wilkins reiterated that he did not want the assistance of counsel and wished to plead guilty. The court accepted Wilkins' pro se guilty pleas[3] and scheduled a sentencing hearing for June 27, 1986.

---

[3]In addition to pleading guilty to first degree murder, Wilkins pled guilty to unlawful use of a weapon and armed criminal action. He was sentenced to life imprisonment on the armed criminal action charge and to five years' imprisonment for unlawful use of a weapon. The district court's decision in this habeas case only addressed Wilkins' murder conviction and death sentence. See Wilkins, 933 F.Supp. at 1501.

At the sentencing hearing, the state presented evidence of the crime and contended that because the crime involved depravity of mind and was committed in the course of a robbery, there were sufficient aggravating circumstances to warrant the death penalty. Wilkins continued to proceed pro se, though standby counsel was present. Dr. Logan testified about Wilkins' mental health background at sentencing, but Wilkins objected to some of the mitigating circumstances thus offered. The trial court sustained most of Wilkins' objections. Wilkins explained that he preferred the death penalty over life in prison. At the conclusion of the sentencing hearing, the court sentenced Wilkins to death. He was 17. He took no steps to appeal his plea or his sentence.

The Supreme Court of Missouri appointed the state public defender as amicus curiae to brief and argue "any issue subject to review" during the mandatory statutory review of his death sentence. Wilkins, acting as his own attorney, appeared personally and told the Supreme Court of Missouri that he did not want the assistance of an attorney, and he took issue with some of the remarks made by the public defenders arguing the case. He also told the Supreme Court of Missouri that his decision to seek the death penalty was a rational one. Wilkins v. State, 802 S.W.2d 491, 496 (Mo. 1991) (en banc). After hearing and observing Wilkins as he attempted to waive counsel at this proceeding, the court ordered Dr. Sam Parwatikar, a psychiatrist with the Missouri Department of Health, to examine Wilkins with respect to his competence to waive counsel on appeal. After examining Wilkins, Dr. Parwatikar concluded that Wilkins was not capable of waiving his right to counsel. Heeding Dr. Parwatikar's determination, the Supreme Court of Missouri set aside its prior proceedings and appointed counsel to represent Wilkins despite his protestations. New briefs were filed and the court heard arguments anew. Nevertheless, the court affirmed Wilkins' conviction and death sentence on a 4-3 vote at the conclusion of its direct statutory review. State v. Wilkins, 736 S.W.2d 409 (Mo. 1987) (en banc).

5

Less than one year later, on June 30, 1988, Wilkins, who was then 19 years old, decided that he did not want to be executed and filed a motion for postconviction relief pursuant to Missouri Rule of Criminal Procedure 24.035 (1988), in an attempt to set aside his conviction and sentence. Among other claims, Wilkins asserted that his waiver of counsel and guilty plea were not knowingly and voluntarily made. The sentencing court held a hearing regarding Wilkins' motion from May 22 through May 26, 1989. At this postconviction hearing, Wilkins, with the assistance of appointed counsel, introduced the testimony of several psychiatrists and psychologists who had examined him. Dr. Dorothy Lewis, a professor of psychiatry at the New York University School of Medicine, explained that Wilkins' paranoia motivated his decision to waive counsel and that his thought processes were confused and illogical throughout the former proceedings. (State Postconviction Tr. at 27, 47-48.) Dr. William O'Connor, a psychologist, testified that Wilkins' guilty plea was not a voluntary and intelligent decision, but rather an emotionally-driven decision that was the product of his mental disorder. (Id. at 252.) Dr. Logan also testified and agreed with Dr. Parwatikar's earlier conclusion that Wilkins was not "competent" to proceed as his own attorney, even though Dr. Logan was previously ambivalent regarding Wilkins' competence to stand trial. Dr. Logan also believed that Wilkins' waiver of counsel was an emotionally-charged impulsive decision. (Id. at 494.)

In response, the state called Mr. Duchardt and Dr. Mandracchia to testify. Mr. Duchardt stated he did not believe that any of Wilkins' decisions were made knowingly, intelligently, and voluntarily. (Id. at 642.) He had consistently and forcefully made the same point in the trial court's proceedings. Dr. Mandracchia explained that his initial 95-minute examination was not designed to address the issue of whether Wilkins' waiver of counsel and guilty plea were knowing, intelligent, and voluntary. The postconviction court thus ordered Dr. Mandracchia to perform an additional evaluation of Wilkins that would be directed at these issues. After conducting clinical interviews lasting over seven hours, Dr. Mandracchia concluded that Wilkins' waiver of counsel, guilty plea, and waiver of offering mitigating evidence were made knowingly, but these

6

decisions were not made voluntarily or intelligently. (Tr. of Resumed State Postconviction Hrg. at 893.) Dr. Mandracchia explained that throughout the previous state court proceedings at issue, Wilkins was not capable of considering and appreciating his full range of options and believed that his only course of action was to receive the death penalty. The postconviction court simply rejected the uncontroverted evidence as "unpersuasive." The postconviction court denied relief, and the Supreme Court of Missouri upheld this decision with one judge dissenting. Wilkins, 802 S.W.2d at 501-02.

Wilkins then filed his petition for a writ of habeas corpus in federal court pursuant to 28 U.S.C. § 2254, alleging multiple grounds for relief. The district court granted Wilkins' request for an evidentiary hearing and heard testimony in January 1996. Many of the same doctors who previously testified in the state court proceedings appeared at the federal evidentiary hearing and reiterated their previous findings, indicating that Wilkins' decisions were not made intelligently or voluntarily. Following the hearing, the district court found that Wilkins did not knowingly, intelligently, or voluntarily waive his right to counsel, enter his guilty plea, or waive his right to offer mitigating evidence at sentencing.[4] Thus, the district court conditionally granted Wilkins' petition for habeas corpus relief, which will become a permanent grant of relief unless the state commences proceedings to afford him a new trial within 60 days. The Respondent now challenges the district court's decision to grant habeas relief.

---

[4]The district court also granted relief on two additional grounds: (1) that the prosecutor had a conflict of interest that violated Wilkins' right to due process, and (2) that the Supreme Court of Missouri's proportionality review was performed in a manner that also violated Wilkins' due process rights. Because we uphold the district court's decision to grant relief on the waiver and guilty plea grounds, we find it unnecessary to address the latter two issues.

## II.

## A. Waiver of Counsel

We review the district court's legal conclusions de novo and its factual findings for clear error.  Miller v. Lock, 108 F.3d 868, 870 (8th Cir. 1997).  We defer to a state court's findings of fact if they are fairly supported by the record.  Pryor v. Norris, 103 F.3d 710, 712-13 (8th Cir. 1997).  See 28 U.S.C. § 2254(d) (1994).

An accused has a constitutional right to self-representation but must knowingly, intelligently, and voluntarily waive the right to counsel.  Faretta v. California, 422 U.S. 806, 819-21, 835 (1975).  See Abdullah v. Groose, 75 F.3d 408, 412 (8th Cir.), cert. denied, 517 U.S. 1215 (1996).  Whether a defendant validly waived his constitutional right to counsel is not a question of historical fact but a question requiring "application of constitutional principles to the facts as found," Brewer v. Williams, 430 U.S. 387, 403 (1977) (internal quotations omitted), which we review de novo.  Because the assistance of counsel is crucial to our adversarial system of justice, courts must "indulge every reasonable presumption against the waiver."  Johnson v. Zerbst, 304 U.S. 458, 464 (1938) (internal quotations omitted), overruled in part on other grounds by Edwards v. Arizona, 451 U.S. 477 (1981).  To determine the validity of a waiver of counsel, courts consider the defendant's waiver in light of the totality of the circumstances, "including the background, experience, and conduct of the accused." Young v. Lockhart, 892 F.2d 1348, 1351 (8th Cir. 1989) (internal quotations omitted). The Supreme Court has explained the requirements for a valid waiver of counsel.

> To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter.

Von Moltke v. Gillies, 332 U.S. 708, 724 (1948) (plurality). To validly waive counsel, a defendant must actually understand all of the relevant considerations; thorough advice from the court alone is not sufficient. See Godinez v. Moran, 509 U. S. 389, 401 n.12 (1993); United States v. Cash, 47 F.3d 1083, 1088 (11th Cir. 1995). Consequently, "[a] judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances under which such a plea is tendered." Von Moltke, 332 U.S. at 724 (plurality). The trial court should not merely take the defendant's statement that he is knowingly and intelligently waiving counsel "at face value." Wise v. Bowersox, 136 F.3d 1197, 1203 (8th Cir. 1998).

The Respondent contends that the district court erroneously found Wilkins' waiver of counsel was not knowing, intelligent, and voluntary without giving proper deference to the state court's findings. We disagree. The district court did not make any findings of historical fact that conflict with the state court's findings of historical fact. In fact, the state court made no findings of fact relevant to the waiver of counsel. The district court's comprehensive review of the facts simply led it to a legal conclusion regarding waiver of counsel that differs from the state court's determination and demonstrated that the state court's conclusion was not fairly supported by the record.

Initially, we note that the state trial court's inquiry to determine the validity of Wilkins' waiver of his right to counsel was not the kind of "penetrating and comprehensive examination" required to ensure that an accused's waiver of counsel is valid. Von Moltke, 332 U.S. at 724 (plurality). The court's colloquy with Wilkins regarding his decision to waive counsel consisted predominantly of leading questions that failed to allow Wilkins to articulate his reasoning process. (See, e.g., J.A. at 648-49, 654-60, 675-694.) While Wilkins' simple "yes" and "no" answers indicated an intention to waive his right to counsel, this does not conclusively establish that his waiver of counsel was valid. A judge has an obligation to penetrate the surface with a more probing inquiry to determine if the waiver is made knowingly, intelligently, and

voluntarily.  See Von Moltke, 332 U.S. at 724 (plurality).  Wilkins did, however, make it very clear to the trial court that the only attorney he would even consider taking was one who would do everything he could to clear Wilkins' path to the gas chamber.  (J.A. at 657.)

The record reveals that at no time did the state court explain to Wilkins his possible defenses to the charges against him, nor did the court inform him of lesser included offenses or the full range of punishments that he might receive.  (See J.A. at 647-95.)  The Respondent asserts that the statements made by Mr. Duchardt during this inquiry establish that Wilkins did understand all of his potential defenses and possible punishments.  While Mr. Duchardt indicated to the court that he had attempted to explain all of the available options to Wilkins (see J.A. at 659-60, 662), he testified that he never discussed lesser included offenses or ranges of punishment with Wilkins and that Wilkins did not give him an opportunity to explain all of his potential options (see Postconviction Tr. at 640-43; Dist. Ct. Evid. Hrg. Tr. at 87-88).

The state court also failed to adequately address and consider Wilkins' background in determining the validity of his waiver of counsel.  Relying on the decision in Colorado v. Connelly, 479 U.S. 157, 164 (1986), the Respondent contends that a defendant's mental condition and other personal characteristics are not relevant to a determination of voluntariness unless there is proof that the defendant was subjected to coercive pressures.  The Respondent's reliance on Colorado is misplaced because that decision pertains only to the voluntariness of confessions and the application of the exclusionary rule to police conduct during interrogations.  In the waiver of counsel context, we have explained that a defendant's background and personal characteristics are highly relevant in determining the validity of such a waiver.  Young, 892 F.2d at 1351; see Edwards, 451 U.S. at 482.  Moreover, the mental health of a defendant is also a relevant consideration in assessing whether a waiver of counsel was knowing, intelligent, and voluntary.  See Cash, 47 F.3d at 1088.  While a finding of coercion bears upon the voluntary aspect of the waiver, it is not a necessary

10

prerequisite to reach the conclusion that a waiver was not made knowingly, intelligently, and voluntarily.

In the present case, while the state trial court briefly addressed Wilkins' youth and limited educational background (J.A. at 649), the court took no account of Wilkins' upbringing. The record is uncontroverted that Wilkins was severely abused as a child by his mother and her boyfriends, that he had a history of drug abuse, and that by the age of 10, he had been in and out of mental health facilities and had been described as having demonstrated homicidal and suicidal tendencies. Given the combination of Wilkins' young age and the record evidence of his severely troubled childhood, the state trial court's colloquy with Wilkins was far from the kind of in-depth inquiry that is necessary to ensure a valid waiver of counsel.[5]

The state trial court erroneously believed that its previous finding that Wilkins was competent to stand trial was alone sufficient to mandate a conclusion that Wilkins' waiver of counsel was valid. (See J.A. at 650.) We believe this legal error also invaded the direct review proceedings in the Supreme Court of Missouri. See Wilkins, 736 S.W.2d at 415 (holding that "a finding of competency necessarily entails the ability to waive certain rights"). It also permeated the postconviction court's conclusion. (Resp. Ex. G, at 92 ("The court concludes that the finding of competency of movant to proceed entailed the ability to waive certain rights and to make [the] decision to enter [a] plea of guilty and under the circumstances of this case to waive counsel and proceed pro se.")) It is true that the level of competency required to waive the right to counsel is the same as that required to stand trial. Godinez v. Moran, 509 U.S. 389, 398

_____

[5]We reject out of hand the Respondent's assertion that our evaluation of the state trial court's inquiry regarding the validity of Wilkins' waiver of counsel constitutes a new constitutional rule that may not be applied retroactively under the holding of Teague v. Lane, 489 U.S. 288 (1989). Fifty years ago, in Von Moltke, 332 U.S. at 724 (1948) (plurality), the Supreme Court established the requirement that a judge's inquiry regarding waiver of counsel must be comprehensive and probing.

11

(1993); Branscomb v. Norris, 47 F.3d 258, 263 (8th Cir.), cert. denied, 515 U.S. 1109 (1995). The Supreme Court has clarified, however, that a valid waiver of counsel requires more than competency to stand trial. The trial court must also "satisfy itself that the waiver of his constitutional rights is knowing and voluntary." Godinez, 509 U.S. at 400. The Court further explained that the competency inquiry focuses on whether a defendant "has the ability to understand the proceedings" while the knowing and voluntary inquiry is aimed at determining "whether the defendant actually does understand the significance and consequences of a particular decision and whether the decision is uncoerced." Id. at 401 n.12. Relying on settled law, the Court explained, "In this sense there is a 'heightened' standard for pleading guilty and for waiving the right to counsel, but it is not a heightened standard of competence." Id. at 400-401. The state court committed legal error by concluding that Wilkins' waiver was valid merely because he had been found competent to stand trial. In the postconviction proceeding, the Supreme Court of Missouri articulated the proper standard (that a waiver must also be knowing, intelligent, and voluntary), but affirmed the denial of relief by emphasizing Wilkins' competence, the trial court's opportunity to observe Wilkins, and Wilkins' use of standby counsel "when it met his purposes." Wilkins, 802 S.W.2d at 501-02. These elements, however, do not necessarily lead to the conclusion that Wilkins voluntarily and intelligently waived counsel.

The uncontroverted record as a whole throughout the state proceedings indicates that Wilkins' waiver of counsel was not knowing, intelligent, and voluntary. The state court accepted Wilkins' waiver of counsel without making findings of fact and without explicitly concluding that Wilkins' waiver was made knowingly, intelligently, and voluntarily. The record before the state trial court simply does not support the conclusion that Wilkins had the requisite level of understanding necessary to establish that his waiver of counsel was knowing, intelligent, and voluntary. In addition to not being informed of all of his potential options, the evidence overwhelmingly indicates that Wilkins' state of mind precluded him from making a valid waiver of counsel. As early as the first competency hearing, Dr. Logan testified to the numerous mental and

12

emotional problems that interfered with Wilkins' "decision making process at certain critical points." (J.A. at 627.) Dr. Logan described Wilkins as "a very impulsive individual who really doesn't think through the consequences of some of his decisions." (Id.) Dr. Logan also indicated that Wilkins' upbringing was devoid of "supervision or tutoring or guidance in terms of how to use his mind to make rational common sense decisions." (Id. at 629.)

On direct review in state court, the Supreme Court of Missouri ordered Dr. Parwatikar to perform a psychiatric evaluation of Wilkins for the purpose of determining Wilkins' capacity to waive the right to counsel on review before that court. He testified at the postconviction hearing that in his opinion, Wilkins was not capable of waiving the right to counsel at the time of his original waiver of counsel and guilty plea. (State Postconviction Tr. at 849-50.) Dr. Parwatikar attributed Wilkins' inability to validly waive counsel to his mental disorders and upbringing and informed the court that Wilkins was also unable to waive counsel on direct appeal. Acting on Dr. Parwatikar's recommendation, the Supreme Court of Missouri most tellingly refused to permit Wilkins to proceed pro se; it appointed counsel to represent Wilkins on direct review, despite Wilkins' persistent and professed desire to waive counsel at its proceeding as well.

At the state postconviction hearing, the uncontroverted testimony of the several doctors who had examined Wilkins all indicated that he was mentally disturbed and that his decisions to waive counsel and plead guilty were the product of his mental illness and immaturity and not rational decision making. Dr. Logan, who for the first time was then addressing the validity of Wilkins' waiver, stated that Wilkins' decision did not make sense and was impulsive. Moreover, the postconviction court instructed the state's own witness, Dr. Mandracchia, to conduct an additional evaluation after Dr. Mandracchia revealed during the postconviction hearing that his initial examination was not directed at Wilkins' waiver of counsel but at whether Wilkins met the statutory competency requirements to stand trial. After further evaluation, Dr. Mandracchia

13

unequivocally stated that Wilkins' waiver of counsel, while done knowingly, was not made intelligently or voluntarily. (Tr. of Resumed State Postconviction Hrg. at 893.) The state court made no fact-findings to indicate why it was unpersuaded by the unanimous testimony presented at the postconviction hearing, and the record simply does not support the state court's conclusion that Wilkins knowingly, intelligently, and voluntarily waived his right to counsel.

Similar evidence was adduced at the federal evidentiary hearing. Dr. Logan appeared once again and explained that Wilkins was driven by an "internal coercion" that prevented him from voluntarily or intelligently waiving his right to counsel. Wilkins, 933 F. Supp. at 1513. After considering the entire record, we conclude that the district court did not err in finding that Wilkins' waiver of counsel was not made knowingly, intelligently, and voluntarily.

Relying chiefly on the Supreme Court's decision in Drope v. Missouri, 420 U.S. 162 (1975), the Respondent argues that all of the expert testimony submitted after Wilkins' waiver of counsel is not relevant to a determination of the validity of the waiver. In Drope, the issue was whether the trial court sua sponte should have suspended trial until a competency evaluation of the defendant could be made. The Supreme Court noted in a footnote that the after-the-fact testimony of psychiatrists submitted in a postconviction hearing was not relevant to this determination. See Drope, 420 U.S. at 181 & n.17; James v. Singletary, 957 F.2d 1562, 1569-71 (11th Cir. 1992) (discussing Pate v. Robinson, 383 U.S. 375 (1966), upon which Drope heavily relies). Additionally, we have indicated that "[r]etrospective determinations of whether a defendant is competent to stand trial or to plead guilty are strongly disfavored." Weisberg v. State of Minnesota, 29 F.3d 1271, 1278 (8th Cir. 1994), cert. denied, 513 U.S. 1126 (1995). The context of the present case, however, differs significantly from the circumstances in either Drope or Weisberg. In those cases, the defendant attempted to attack his competence to stand trial or to plead guilty without ever having had the benefit of a contemporaneous competency hearing. In the present case, Wilkins'

14

competency to stand trial (the same level of competency being required to waive counsel) was contemporaneously evaluated, with a focus on whether Wilkins met Missouri's statutory definition of competency, and it is not now at issue. Those contemporaneous evaluations raised immediate, well-founded concern about Wilkins' ability to make a knowing, intelligent, and voluntary waiver, though not specifically addressing that subject. Dr. Logan's contemporaneous evaluation acknowledged in particular the existence of Wilkins' mental and emotional problems as well as the limitations those problems might impose on his ability to make rational decisions. Thus, the subsequent testimony of the same doctors is not the type of after-the-fact speculation of concern in <u>Drope</u> and <u>Weisberg</u>. Given the state trial court's failure to make a probing inquiry in spite of the extensive evidence of Wilkins' background, which had been in the record since the competency hearing, the district court did not err by considering the entire state court record.

## B. Guilty Plea and Waiver of Mitigating Evidence

The Respondent asserts that the district court erred in granting Wilkins relief on the claims that his guilty plea and waiver of the right to present mitigating evidence were not made knowingly, intelligently, and voluntarily. Initially, the Respondent contends that Wilkins only raised the issue of his competence in state court and procedurally defaulted these other claims by failing to raise them in the state courts. We disagree. The record indicates that Wilkins raised these issues in the state postconviction court and the appeal of that decision in the Supreme Court of Missouri, specifically asserting that his guilty plea and waiver of the right to present mitigating evidence were not knowing, intelligent, and voluntary decisions. Wilkins did not procedurally default these claims.

We also believe that the district court correctly concluded that Wilkins' guilty plea and waiver of presenting mitigating evidence were not knowing, intelligent, and voluntary. To be valid, a guilty plea must represent "a voluntary and intelligent choice

15

among the alternative courses of action open to the defendant," North Carolina v. Alford, 400 U.S. 25, 31 (1970), and the defendant must "possess[ ] an understanding of the law in relation to the facts." McCarthy v. United States, 394 U.S. 459, 466 (1969). We find that Wilkins' guilty plea and waiver of presenting mitigating evidence were not valid for essentially the same reasons that lead us to conclude that his waiver of counsel was not valid.

Initially we note that Wilkins' conclusory affirmation that he was pleading guilty voluntarily does not establish definitively that his plea was in fact valid. See Von Moltke, 332 U.S. at 724; Gonzales v. Grammar, 848 F.2d 894, 900 (8th Cir. 1988). As demonstrated above, the record indicates that Wilkins' youth, troubled background, and substantial mental impairments clouded his decision-making throughout the state proceedings. At the state postconviction hearing, Dr. Mandracchia directly stated his opinion that neither Wilkins' guilty plea nor his waiver of presenting mitigating evidence were intelligent or voluntary. Moreover, the record does not establish that Wilkins possessed the required "understanding of the law in relation to the facts." McCarthy, 394 U.S. at 466. As mentioned earlier, the state court did not discuss possible defenses such as diminished capacity; the court failed to inform Wilkins of possible lesser included offenses such as second degree murder and manslaughter; and the court did not explain the full range of potential sentences that Wilkins could receive. The court limited its discussion of sentences to the death penalty and life imprisonment without parole. (J.A. at 676, 682, 695-96.) The court's omission of other potential sentences is quite significant in light of Wilkins' statement to the court that he did not absolutely wish for the death penalty but merely preferred it over spending the rest of his life in prison. (See J.A. 791-92.) Additional reports from Dr. Mandracchia indicate that Wilkins did not understand his legal alternatives. Dr. Mandracchia stated that Wilkins "would not, and functionally, could not, meaningfully entertain possibilities such as acquittal, insanity defense, conviction of a lesser included offense, mitigating circumstances, parole following a period of incarceration, etc." (Appellee's Br. at 14, citing Ex. P-33 at 4.) In light of this evidence, we conclude that the district court

16

properly determined that Wilkins did not knowingly, intelligently, and voluntarily plead guilty and waive his right to present mitigating evidence.

## C. Evidentiary Hearing

The Respondent claims that the district court erred in holding an evidentiary hearing. The Respondent asserts that the district court's decision to hold an evidentiary hearing stems from Wilkins' failure to fully develop the facts in the state courts and that the district court impermissibly expanded the record. We disagree. The district court held the evidentiary hearing because in its view the state courts had failed to make factual findings on certain issues, ignored the facts with respect to certain issues, and arrived at conclusions that were not supported by the record. Wilkins, 933 F. Supp. at 1504-05. Although the district court was not required to hold a hearing in this case, it exercised its discretionary power in an effort to resolve the deficiencies it found in the state court findings. See Townsend v. Sain, 372 U.S. 293, 318 (1963) (stating that in every case, a district judge "has the power, constrained only by his sound discretion, to receive evidence bearing upon the applicant's constitutional claim"), overruled in part, Keeney v. Tamayo-Reyes, 504 U.S. 1 (1992) (holding habeas petitioner has no right to hearing to develop facts not developed in state court proceeding, absent a showing of cause and prejudice). See also Clemmons v. Delo, 124 F.3d 944, 952 (8th Cir. 1997) (noting that the Supreme Court's decision in Keeney v. Tamayo-Reyes did not alter a court's discretionary power to order an evidentiary hearing), cert. denied, 118 S. Ct. 1548 (1998); Jamison v. Lockhart, 975 F.2d 1377, 1381 (8th Cir. 1992) (same). The district court did not abuse its discretion in holding such a hearing in this case.[6]

---

[6]Because we find the Respondent's assertion that the petitioner failed to develop the factual record in the state court to be erroneous, we need not decide whether the new statutory provisions concerning when a district court can hold such an evidentiary hearing added to § 2254 by the Antiterrorism and Effective Death Penalty Act of 1996, signed into law on April 24, 1996, apply to this case. See 28 U.S.C. § 2254(e)(2) (as amended) ("If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless

## D.  Jurisdiction to Vacate Previous Order

Finally, the Respondent contends that the district court erred by vacating its previous order dated May 16, 1995, granting relief on only one of Wilkins' claims, after our court remanded the case "for resolution of all matters contained in the first amended petition for writ of habeas corpus."  (J.A. at 976.)  Rule 60(b) of the Federal Rules of Civil Procedure affords district courts much discretion to vacate their orders.  See Tungseth v. Mutual of Omaha Ins. Co., 43 F.3d 406, 409 (8th Cir. 1994).  The district court did not abuse its discretion or exceed the scope of the remand order by choosing to decide all of Wilkins' claims in a single order.  Similarly, we reject the Respondent's assertion that Wilkins' challenge to the validity of his waiver of counsel constitutes an abuse of the writ.  The Respondent's abuse-of-the-writ claim hinges upon the argument that the district court exceeded its jurisdiction by vacating its previous order.  Because the district court had the authority to vacate its previous order and consider all of Wilkins' claims together, we reject as meritless Respondent's assertion that Wilkins has abused the writ.

## III.

In sum, we affirm the judgment of the district court, conditionally granting relief on Wilkins' claims that his waiver of his right to counsel, his guilty plea, and his waiver

---

the applicant shows . . . .").  We note the evidentiary hearing in this case was held some four months before the Act was signed into law.  See also Lindh v. Murphy, 117 S. Ct. 2059, 2067 (1997) ("The provision [28 U.S.C. § 2264(b) contained in new Chapter 154] thus confirms that Congress assumed that in the absence of such a provision, §§ 2254(d) and (e) (as new parts of Chapter 153) would not apply to pending federal habeas cases.")

of the right to present mitigating evidence were not made knowingly, intelligently, and voluntarily. Given our decision to uphold the grant of relief on these claims, we find it unnecessary to review the merits of Wilkins' additional arguments.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.