

# SUPREME COURT OF MISSOURI
## en banc

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | *Opinion issued May 2, 2023* |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | No. SC99464 |
| | ) | |
| RANDY G. TETER, | ) | |
| | ) | |
| Appellant. | ) | |

**APPEAL FROM THE CIRCUIT COURT OF COLE COUNTY**
The Honorable Patricia S. Joyce, Judge

Randy Teter appeals the circuit court's judgment convicting him of one count of kidnapping in the first degree, and one count of committing violence against an employee of the Department of Corrections. Teter raises two points on appeal: (1) the circuit court erred in failing to conduct a sufficient *Faretta*[1] hearing to ensure his waiver of counsel was knowing, intelligent, and voluntary; and (2) the circuit court erred in ordering his sentence to run consecutively to his prior sentence in violation of a plea agreement previously entered into with the State. Finding no plain error, this Court affirms the circuit court's judgment of conviction.

---

[1] *Faretta v. California*, 422 U.S. 806 (1975).

## Facts and Procedural History

In 2019, Teter pleaded guilty to offenses unrelated to this case. In the plea agreement, the State agreed, if it obtained probable cause of a crime arising from the incidents in this case, "the State will agree that for any sentences arising from that prosecution the State shall recommend: (a) a concurrent sentence with all other terms and sentences of incarceration[.]"

Teter was an inmate at the Jefferson City Correctional Center ("JCCC"). In July 2018, Teter attacked a JCCC employee, holding her briefly as a hostage. The State charged Teter with one count of kidnapping and one count of committing violence against an employee of the Department of Corrections. The public defender's office initially represented Teter, but Teter filed a motion requesting to represent himself at trial, citing his constitutional right to do so. In his motion, Teter referenced a previous criminal case for prior, unrelated offenses in which he represented himself, stating:

> In State v. Teter, 14AC-CR02666 Teter was charged with Murder in the first degree with the State seeking the death penalty. After two Feretta [sic] hearings, the Court granted Teter his motion to represent himself. The above entitled case is nowhere near as complex as the death penalty case mentioned . . . above. Teter has multiple in court appearances without any issues from him.

At the *Faretta* hearing in this case, the circuit court asked Teter if he wished to represent himself and waive his right to counsel. Importantly, Teter was still represented by a public defender at this hearing, and his counsel even interjected during the hearing to clarify the range of punishment for one of the charges. Teter affirmed he wished to

2

represent himself.  He signed a written waiver of counsel form mandated by § 600.051.[2]

Teter, with defense counsel present, the State, and the circuit court had the following exchange:

> The Court: Mr. Teter, is that your understanding as well, that you still want to represent yourself?
>
> Teter: Yes, Your Honor.
>
> The Court: All right.  It's my understanding that you've had several times where you've gotten this far with the Court in Cole County and they were gonna -- they had hearings on it.  Do you have me having -- Do you have any objection to me taking notice of those other hearings where they went through all those rights with you?
>
> Teter: No, Your Honor.
>
> The Court: All right.  I won't be having stand-by counsel for you; do you understand that?
>
> Teter: That is fine, Your Honor.
>
> The Court: Okay.  And additionally with your history and what you're in custody for, you will have very limited rights of moving around the courtroom; do you understand that?
>
> Teter: Yes, Your Honor, I understand that.
>
> The Court: All right.  I'm gonna go ahead and read these rights to you, and then we'll fax them over there.  And if that's what you want to do, you might have to sign it later, but -- All right.
>
> I request that the Court allow my waiver of attorney with full understanding that I'm entitled to an attorney if I so desire and with full knowledge and understanding of the following additional considerations.  The offenses charged are escape from confinement --
>
> The State: There's two other charges.

The Court then went through the range of punishment for each offense and covered Teter's constitutional rights and the rights he was relinquishing.

---

[2] All statutory references are to RSMo 2016, unless otherwise indicated.

The Court: That you have the right to be represented by an attorney. And if indigent and unable to employ an attorney, I have a right to request the judge to appoint an attorney to assist me in defending against the charge. And the Court will appoint an attorney to assist me if it finds that I'm indigent and not able to employ one. That you have the right to a trial by jury with assistance of an attorney to confront and cross-examine witnesses. And a guilty plea waives any right to a trial. That I have the right to remain silent and not make any statement which may be used in the prosecution of the criminal charges filed against me. I am aware that any recommendation by the prosecutor is not binding on the judge who may accept or reject such recommendation. That if a guilty plea is entered, if I'm found guilty by trial of the charge, the judge is most likely to impose a sentence of confinement in jail or prison. That I've had the right to appeal the Court's decision or the jury's verdict should I exercise my right to trial by jury and be found guilty. The above rights have been read to me by the judge in open court. I understand these rights and request the Court to accept my waiver. Is that what you want to do today, sir?

Teter: Yes, Your Honor.

The Court: All right. And, Mr. Teter, it's my understanding that you're familiar with the court system and that you don't have any mental prohibitions against you representing yourself.

Teter: That's correct, Your Honor.

The Court: All right. All right. I'll discharge the public defender.

A Cole County jury found Teter guilty of both charged offenses. Teter did not file a motion for new trial. Because Teter was a prior offender, the circuit court proceeded to sentencing. At the sentencing hearing, Teter referenced the plea agreement in his prior case, stating: "Your Honor, the only thing I have to say on the record is what the plea agreement was which is page 4, line 1 through 6. You have a copy." The State deferred to the prior plea agreement, refraining from making a recommendation on either the length of Teter's sentence or whether the sentence in the present case should run consecutively to or concurrently with his prior sentence. The sentencing court sentenced

4

Teter to 30 years' imprisonment on Count I and 10 years on Count II to run concurrently with each other and consecutively to the other sentences he was serving.

Teter, with the assistance of counsel, appealed. After opinion by the court of appeals, this Court granted transfer and has jurisdiction. Mo. Const. art. V, § 10. The judgment is affirmed.

## Discussion

### I. The circuit court did not plainly err in finding Teter's waiver was knowing, intelligent, and voluntary

Teter first argues the circuit court erred in allowing him to proceed to trial without counsel without first conducting a sufficient *Faretta* hearing on the record to ensure his waiver of counsel was knowing, intelligent, and voluntary.

### Standard of Review

To preserve a constitutional claim of error, the "claim must be raised at the first opportunity with citation [] to specific constitutional sections." *State v. Tisius*, 362 S.W.3d 398, 405 (Mo. banc 2012). Further, "to preserve claims of error for appellate review in cases tried by a jury, claims of error must be raised in post-trial motions." *Hootselle v. Mo. Dep't of Corr.*, 624 S.W.3d 123, 131 (Mo. banc 2021). "A defendant who proceeds *pro se* is bound by the same rules as a party represented by counsel." *Franklin v. State*, 24 S.W.3d 686, 692 (Mo. banc 2000); *see also State v. Wise*, 879 S.W.2d 494, 514 (Mo. banc 1994), *overruled on other grounds by Joy v. Morrison,* 254 S.W.3d 885, 888 n.7 (Mo. banc 2008). "Our courts cannot hold *pro se* defendants to a different standard than those represented by counsel." *Franklin*, 24 S.W.3d at 692.

5

Typically, unpreserved claims may be reviewed only for plain error. *State v. Miller*, 372 S.W.3d 455, 473 (Mo. banc 2012).

"The threshold issue in plain error review is whether the circuit court's error was facially evident, obvious, and clear. If the appellant establishes a facially evident, obvious, and clear error, then this Court will consider whether the error resulted in a manifest injustice or miscarriage of justice. To obtain a new trial on direct appeal based on a claim of plain error, the appellant must show the error was outcome determinative." *State v. Wood*, 580 S.W.3d 566, 579 (Mo. banc 2019) (internal citations and quotations omitted).

In this case, neither Teter nor his attorney objected to the procedure utilized by the circuit court when it conducted the *Faretta* hearing and ruled on his motion to represent himself. Therefore, this claim is not preserved. Teter argues this Court should, nonetheless, review his claim *de novo* because he was acting *pro se*. In this case, Teter was not acting *pro se* during the *Faretta* hearing, and his counsel did not object—nor even suggest the hearing was insufficient to ensure the waiver of counsel was knowing, voluntary, and intelligent. Not only did Teter's counsel still have the responsibility to represent him until discharged, but Teter's counsel embodied this responsibility by interjecting on Teter's behalf. The cases the concurring opinion relies upon to suggest that this case should be reviewed *de novo* rather than under plain error review are distinguished because those cases involve situations in which there was no written waiver

6

of counsel or waiver of the right to counsel on the record.[3]  This Court, therefore, applies the plain error standard of review to Teter's first claim.[4]

## Analysis

The Sixth Amendment affords the right to those accused in all criminal prosecutions to have the assistance of counsel for their defense.  U.S. Const. amend. VI. At the same time, the Sixth Amendment grants the accused the right to make his own defense.  "Although not stated in the Amendment in so many words, the right to self-representation—to make one's own defense personally—is thus necessarily implied by the structure of the Amendment."  *Faretta*, 422 U.S. at 819.  This right applies to the states through the Due Process Clause of the Fourteenth Amendment.  *State v. Black*, 223 S.W.3d 149, 153 (Mo. banc 2007).

"There are four requirements for a defendant seeking to waive his right to counsel and proceed *pro se*.  A defendant's invocation of the right must be made unequivocally and in a timely manner, and the corresponding waiver of counsel must be knowing and intelligent."  *Id*.  "A thorough evidentiary hearing must support the trial court's ruling

---

[3] The concurring opinion and the cases themselves do not explain why *de novo* review should apply to Teter.  Instead, the concurring opinion cites to *Thompson v. Keohane*, 516 U.S. 99 (1995), *Brewer v. Williams*, 430 U.S. 387 (1977), and *Wilkins v. Bowersox*, 145 F.3d 1006 (8th Cir. 1998), three habeas corpus cases concerning the federal circuit court's duty to accept factual findings by the district court pursuant to 28 U.S.C. § 2254 (1994).  Finally, in a last chance effort, the concurring opinion cites to *Pearson v. Koster*, 367 S.W.3d 36, 44 (Mo. banc 2012), a civil election law case, to establish that Teter's criminal appeal should be reviewed *de novo*.  As all of the cases cited by the concurring opinion are distinguishable and do not follow this Court's precedent for unpreserved constitutional claims of error after a felony trial, this Court will review Teter's claim for plain error.

[4] It is not necessary to determine what the proper standard of review would be if Teter had been *pro se* during the *Faretta* hearing—and, of course, it would be a rare occurrence that a circuit court would permit the waiver of counsel in a felony case likely to proceed to trial without at least initially appointing counsel for an indigent defendant.

7

upon a defendant's timely and unequivocal request to proceed *pro se*." *Id*. at 155.

The test for determining if the waiver is made intelligently and knowingly depends on the

particular facts and circumstances surrounding the case, including the background,

experience, and conduct of the accused." *State v. Hunter*, 840 S.W.2d 850, 858 (Mo.

banc 1992) (internal quotations omitted).

No particular litany of questions is required, but this Court has listed several

subjects a circuit court should explore on the record to ensure a defendant's waiver is

voluntary, knowing, and intelligent:

> [A] trial court should inquire into the defendant's capacity to make an
> intelligent decision and his knowledge of his own situation. . . . [T]he court
> should ensure that the defendant is not acting under duress, does not suffer
> from a mental incapacity, is literate and is minimally familiar with the trial
> process, including possible defenses to the crime charged, the different
> phases of trial, objection procedure and the elements of the crime charged.
>
> . . . .
>
> [T]he court should also make certain that the defendant understands the
> possible penalties if convicted. Trial courts should also be sure that the
> defendant understands exactly what rights and privileges he is waiving, as
> well [as] the dangers associated with waiving constitutional rights. . . .
> [T]he court should first ensure that the defendant understands that he has the
> right to counsel, including appointed counsel if he is indigent. If the
> defendant chooses to continue, the court should advise him generally that it
> is usually a mistake to proceed without a lawyer and then specifically warn
> him about the dangers and repercussions of that decision.

*Black*, 223 S.W.3d at 156 (internal citations omitted).

"Because the State bears the burden to prove that an unrepresented defendant

waived the right to counsel, it follows that to sustain this burden, the State must prove

compliance with section 600.051 and that a defendant was afforded a *Faretta* hearing.

Only then will the burden shift to the unrepresented defendant to establish that the waiver

8

of counsel was not knowing, voluntary, or intelligent." *State v. Kunonga*, 490 S.W.3d 746, 765 (Mo. App. 2016) (internal citations omitted); *see also State v. Shafer*, 969 S.W.2d 719, 727-28 (Mo. banc 1998).[5]  Because Teter signed the waiver of counsel form pursuant to § 600.051 and was afforded the hearing at which the circuit court took judicial notice of Teter's prior hearings, which established prima facie evidence of Teter's constitutional waiver of counsel, the burden shifts to him to prove his waiver was not knowing, voluntary, or intelligent.  *Id.*; *see also City of Kan. City v. Davis,* 629 S.W.2d 631, 635 (Mo. App. 1982); *Tomlin v. State*, 601 So. 2d 124, 128 (Ala. 1991).

Teter's handwritten motion to represent himself cited *Faretta* and the Sixth and Fourteenth amendments to the United States Constitution.  It also provided a case number to *State v. Teter*, No. 14AC-CR02666, and represented: "Teter was charged with Murder in the first degree with the State seeking the death penalty.  After two Feretta [sic] hearings, the Court granted Teter his motion to represent himself."  This handwritten motion also represented this "case is nowhere near as complex as the death penalty case" and stated Teter had "made multiple in court appearances without any issues from him."

---

[5]  When an appellant/movant claims that a waiver of counsel or guilty plea violates due process, the state bears the burden of producing evidence that the waiver or plea is competently, voluntarily and understandingly made.  Once the state puts forth prima facie evidence of a constitutional waiver or plea, the burden shifts to the petitioner to prove by a preponderance of the evidence that the appellant's/movant's waiver was involuntary, or unintelligent or unknowing.

. . .

The competence that is required of a defendant seeking to waive his right to counsel is the competence to **waive the right**, not the competence to represent himself[.]  A criminal defendant's ability to represent himself has no bearing upon his competence to **choose** self-representation.

*Shafer*, 969 S.W.2d at 727-28 (alterations omitted) (internal quotations omitted) (emphasis in original).

9

During the *Faretta* hearing, both Teter and the circuit court acknowledged Teter's prior *Faretta* hearings and, with Teter's consent, the circuit court took judicial notice of those hearings.[6] Further, the court questioned Teter about his familiarity with the court system and whether he had any mental prohibitions against representing himself.[7]

The Court reviews Teter's conduct after his wavier of counsel because his conduct provides circumstantial evidence of what he knew at the time of his waiver. *Jones v. Walker*, 540 F.3d 1277, 1293 (11th Cir. 2008). When there is a question about whether

---

[6] Teter, and the concurring opinion, argue a circuit court may not take judicial notice of prior proceedings without first acknowledging the content of those proceedings and presenting the records physically. This argument is without merit. "Of course a court can judicially notice its own records, and courts, when justice requires, should and do, in deciding a case, consider the records of other cases[.]" *Knorp v. Thompson*, 175 S.W.2d 889, 894 (Mo. 1943). There is no ambiguity in what the circuit court took judicial notice of—it took judicial notice of all the prior hearings when Teter's rights to counsel and self-representation were discussed in the Cole County circuit court. Furthermore, the concurring opinion relies on a pre-*Faretta* case, *Carnley v. Cochran,* 369 U.S. 506, 516 (1962), to support its contention that it is "impermissible" for the circuit court to take judicial notice of its own previous proceedings to develop the record. The concurring opinion's reliance on *Carnley* is misguided. Not only did the trial court in *Carnley* not take judicial notice at any point during the proceedings, but the trial court also completely failed to ask the defendant on the record if he wanted counsel. The **only** proposition *Carnley* stands for is that waiver of counsel cannot be presumed "from a silent record." *Id.*

[7] The constitutional right to self-representation is on equal footing with the right to assistance of counsel and is equally protected because it derives from the same constitutional provision as the right to assistance of counsel. In fact, this Court's seminal *Faretta* case, *Black*, reversed the circuit court's ruling denying the defendant's request to represent himself. 223 S.W.3d at 156. Further, in claiming "[t]he circuit court's colloquy, the records of his prior criminal cases, and the standard waiver of counsel form are insufficient to show Mr. Teter was aware of the phases of trial, trial and objection procedures, the elements of the two felonies with which he was charged, and possible defenses to the crimes charged[,]" the concurring opinion refuses to consider the trial record or to apply the Supreme Court's and this Court's precedents regarding the standard for competency.

> The competence that is required of a defendant seeking to waive his right to counsel is the competence to **waive the right**, not the competence to represent himself[.] A criminal defendant's ability to represent himself has no bearing upon his competence to **choose** self-representation.

*Shafer*, 969 S.W.2d at 728 (alterations omitted) (internal quotations omitted) (emphasis in original).

the circuit court adequately cautioned of the perils of self-representation, a defendant's "past contacts with the criminal justice system and his performance at the proceeding[s] at which he represented himself" are considered. *Ferguson v. Bruton*, 217 F.3d 983, 985 (8th Cir. 2000). Provided "a defendant knows the risks associated with self-representation, it is irrelevant for constitutional purposes whether his understanding comes from a colloquy with the trial court . . . or his own research or experience." *Jones,* 540 F.3d at 1293.[8]

> The entire record is reviewed to determine whether the accused was made sufficiently aware of his right to have counsel and of the possible consequences of a decision to forgo the aid of counsel, given the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused, with the fundamental fairness of the proceeding whose result is being challenged being the ultimate focus of inquiry.

*Ferguson*, 217 F.3d at 985. (internal quotations omitted). It is evident through Teter's performance at the circuit court that he had background experience and acted as someone who was "sufficiently aware of his right to have counsel and of the possible consequences of a decision to forgo the aid of counsel." *Id*.

---

[8] The concurring opinion relies heavily on *Von Moltke v. Gillies*, 332 U.S. 708 (1948), which held "a judge must investigate as long and as thoroughly *as the circumstances of the case before him demand*." *Id*. at 723-24 (emphasis added). The concurring opinion tries to use this case to support its contention that the record the circuit court created was insufficient, but it blatantly ignores the facts of the case. Von Moltke was a German national charged under the Espionage Act during World War II; Von Moltke did not have experience with the United States court system; and the case did not involve an assertion of the right to self-representation at trial. *Id.* at 709-10. The concurring opinion's reliance on *Von Moltke* shows a lack of situational understanding as it insists the circuit court's colloquy during Teter's *Faretta* hearing should have been like that of Von Molke, a foreign national charged with complicated crimes during wartime, rather than have the circuit court hold a *Faretta* hearing that appropriately covers "the circumstances [that] the case before him demand[s]." *Id*. at 723-24.

Prior to his *Faretta* hearing, Teter submitted numerous motions, including a motion for speedy trial, for change of judge, for a civilian to sit at counsel table as his legal assistant; multiple motions requesting documents; and multiple motions in limine. Teter cited specific case law in almost all of his motions. After the discharge of his public defender, Teter argued most of these motions in the circuit court. Additionally, Teter submitted his own voir dire questions, endorsed witnesses, requested subpoenas for his witnesses from the circuit court, filed a motion for an order of protection, and filed a motion to not wear restraints in the presence of the jury. Teter also argued, and won, an objection to the State's motion to disqualify one of his witnesses because Teter was unable to be present when the State attempted to depose the witness. Teter submitted stipulations, which he successfully argued and agreed upon with the State, including the admissibility of certain pieces of evidence. Teter also established if objections would be heard outside of the presence of the jury.

Reviewing the trial transcript, it is readily apparent that, among other things, Teter was familiar with trial procedures, including voir dire, opening and closing statements, procedure for examining witnesses, procedure for introducing evidence, procedure for objecting to evidence, and procedure for publishing documents to the jury. Teter successfully struck a venire person for cause and struck venire persons using peremptory challenges. Teter's opening statement included a discussion of the burden of proof the State must fulfill as well as an overview of his case. During the State's case-in-chief, Teter cross-examined state witnesses about the failings in their investigations and introduced evidence to impeach witnesses. During Teter's case-in-chief, he called six

12

witnesses and introduced evidence. In his closing argument, Teter argued the holes in the State's case and the missed opportunities for investigation led to reasonable doubt as to the charges against him.

Teter and the concurring opinion broadly suggest it continues to be the State's burden—or somehow the burden of the circuit court—to demonstrate the *Faretta* hearing as set out above, plus the matters covered in the prior *Faretta* hearings, are sufficient. But, in this case, Teter signed the statutory waiver of counsel and had a hearing on his motion to represent himself, and this Court's precedent holds, "Once the state puts forth prima facie evidence of a constitutional waiver . . . the burden shifts to the [defendant] to prove by a preponderance of the evidence that the [defendant's] waiver was involuntary, unintelligent, or unknowing." *Schafer*, 969 S.W.2d at 727-28.

Considering the entire record, which includes Teter's background, experience, and trial conduct, in conjunction with the circuit court's colloquy, the record clearly demonstrates Teter's waiver of the right to counsel was knowing and intelligent. Again, "[t]he competence that is required of a defendant seeking to waive his right to counsel is the competence to **waive the right**, not the competence to represent himself[.] A criminal defendant's ability to represent himself has no bearing upon his competence to **choose** self-representation." *Id*. at 728 (alterations omitted) (internal quotations omitted) (emphasis in original).

Furthermore, to the extent Teter claims the hearing was insufficient, he has the obligation to prepare a complete record on appeal necessary to support his claims. *Kunonga*, 490 S.W.3d at 765; Rule 81.12(a)-(b). When the concurring opinion makes

13

blanket assertions about what the record fails to show in this case, it completely ignores the longstanding requirement that Teter had the responsibility to prepare a record on appeal sufficient to review his claims.[9]  *Id.*

In so far as Teter argues the *Faretta* hearings in his prior case cannot be relied upon to demonstrate he was properly warned of the dangers of proceeding *pro se* or that self-representation is a mistake, he has failed to develop a complete record to support his argument.  The circuit court, with Teter's express consent, properly took judicial notice of all the prior hearings in the Cole County circuit court in which his right to counsel and right to self-representation were covered.  "The record on appeal shall contain all of the record, proceedings and evidence necessary to the determination of all questions to be presented, by either appellant or respondent, to the appellate court for decision."  Rule 81.12(a).[10]  Absent agreement of the parties, which did not occur in this case, the

---

[9]  The concurring opinion relies on *Bennett v. Rapid American Corp.*, 816 S.W.2d 677 (Mo. banc 1991), for the proposition that, "[b]y finding Mr. Teter's claim is defeated because he did not file a complete record, the principal opinion misapplies the law and unfairly punishes Mr. Teter for not creating and filing documents not included in the circuit court record, which this Court has said would not properly be in the record on appeal because they were not in the circuit court record."  The concurring opinion ignores *Bennett* was focused on personal jurisdiction for a claim for wrongful death against a group of companies for alleged asbestos-related diseases rather than a circuit court taking judicial notice of its own proceedings.  In *Bennett*, this Court stated: "The court of appeals, as do we, properly refused to review documents not weighed by the trial court because materials not considered by the trial court may not be considered on this appeal."  *Id.* at 678-79.  The principal opinion does not run afoul of this statement; it appropriately presumes the circuit court did what it indicated when it took judicial notice of all its own prior hearings when Teter was advised of his right to counsel and the consequences of his waiver of counsel.

[10]  The record in this case does not indicate Teter ordered the transcripts of the prior *Faretta* hearings referenced in his motion to represent himself and judicially noticed by the circuit court at the hearing on his motion to represent himself.  Rule 81.12(c)(1)-(2).  "The transcript shall contain the portions of the proceedings and evidence not previously reduced to written form and necessary to determination of the issues on appeal."  Rule 81.12(c)(2).  Teter, represented by counsel on appeal, did not supply the court of appeals, nor this Court, with the record of the prior

appellant is responsible for preparing the legal file and transcript. Rule 81.12(a)-(c). Based on this record, Teter has failed to demonstrate the circuit court plainly erred in sustaining Teter's request to represent himself.

## II.     The circuit court did not err in ordering Teter's sentences to run consecutively

Teter argues the circuit court erred in ordering his sentence to run consecutively to the sentence he was already serving. The circuit court did not abuse its discretion.

### Standard of Review

The parties disagree about the proper standard of review. The State argues the proper standard is plain error because Teter did not raise this argument in a motion for new trial. Teter asserts abuse of discretion is proper because he raised the issue in the circuit court and the alleged error occurred during sentencing, which generally occurs after the time to file a motion for new trial.[11] Teter's argument is persuasive. A motion for new trial should be filed between the verdict and sentence and, therefore, would not include sentencing errors. All Teter needed to do to preserve his claimed sentencing error was to raise the issue during the sentencing proceeding. *See State v. Pierce*, 548 S.W.3d 900, 904 (Mo. banc 2018). Teter raised the issue and brought to the court's attention the plea agreement and made a short argument his sentences should be concurrent based on the plea agreement. This point is properly preserved.

---

*Faretta* hearings. "Matters omitted from the record will not be presumed to be favorable to the appellant." *Wilkerson v. Prelutsky*, 943 S.W.2d 643, 649 (Mo. banc 1997).

[11] *See* Rule 29.11(b)-(c).

"A trial court's sentencing decision is reviewed for abuse of discretion." *State v. Russell*, 598 S.W.3d 133, 136 (Mo. banc 2020) (internal quotations omitted). "The circuit court abuses its discretion when the ruling is clearly against the logic of the circumstances and is so unreasonable and arbitrary that the ruling shocks the sense of justice and indicates a lack of careful, deliberate consideration." *Macke v. Patton*, 591 S.W.3d 865, 868 (Mo. banc 2019) (internal quotations omitted).

**Analysis**

Teter bases his argument on the plea agreement he entered into with the State in a prior criminal case, which read, "[The State] shall recommend . . . a concurrent sentence with all other terms and sentences of incarceration" arising from this case. Teter asserts the State breached the plea agreement by failing to recommend a concurrent sentence in the present case. At sentencing, the prosecuting attorney stated, "Judge, we're gonna defer to the Court as to the sentence and whether it's run consecutive or concurrent." When the court asked whether the State had a sentencing recommendation, the prosecuting attorney said, "Per agreement in his prior murder case, we are not advocating a length of time or consecutive or concurrent. We'll defer to the Court." The court ordered Teter's sentences to run concurrently with each other but consecutively to Teter's prior sentences.

It is axiomatic a sentencing court is free to ignore the State's sentencing recommendation. *See Stanley v. State*, 420 S.W.3d 532, 550 (Mo. banc 2014) (citing *State v. Hall*, 955 S.W.2d 198, 202 (Mo. banc 1997)). If the State agrees to make a recommendation for sentencing under Rule 24.02(d)(1)(B), the sentencing court neither accepts nor rejects that agreement. *See id.* at 545. Rather, "[i]n the context of nonbinding

16

plea agreements for a particular sentence, the prosecutor's recommendation is what the court rejects, not the plea agreement itself, and Rule 24.02(d)(4) does not apply." *Id.* at 546.

Teter was specifically informed prior to trial "any recommendation by the prosecutor is not binding on the judge who may accept or reject such recommendation."[12] It is clear from the record the circuit court had the plea agreement in front of it and Teter specifically drew the court's attention to the terms of that agreement. The sentencing court in this case discussed the plea agreement with both parties and acted within its discretion when it sentenced within the statutory range, concurrently with one another, but to run consecutively to the existing sentences of incarceration. On these facts, this Court cannot say the circuit court abused its discretion.

## Conclusion

For the reasons set forth above, this Court affirms the circuit court's judgment.

_____
Zel M. Fischer, Judge

Russell, Powell and Ransom, JJ., concur;
Breckenridge, J., concurs in separate opinion filed;
Wilson, C.J., and Draper, J., concur in separate
opinion of Breckenridge, J.

_____

[12] The State reiterated this fact to Teter at sentencing, stating, "In the end, Judge, no matter what the State says, it's up to the judge to decide what happens."



# SUPREME COURT OF MISSOURI
## en banc

STATE OF MISSOURI,                          )
                                            )
        Respondent,              )
                                            )
v.                                          )    No.  SC99464
                                            )
RANDY G. TETER,                             )
                                            )
        Appellant.               )


CONCURRING OPINION

I concur with the principal opinion's conclusion that the record shows Randy Teter knowingly and intelligently waived his right to counsel. I write separately because the principal opinion reaches the correct conclusion but misapplies the law in its analysis of the facts and law. It incorrectly finds the state makes a *prima facie* showing of a valid waiver of counsel despite nothing in the circuit court record of the hearing on his motion to represent himself demonstrating Mr. Teter was aware of the benefit of counsel and the dangers and disadvantages of self-representation. The principal opinion further misapplies the law in holding Mr. Teter failed to prepare a complete record on appeal when he did not order the creation of transcripts of the hearings in his two prior cases because the circuit court took judicial notice of the hearings in those cases. The resolution of Mr. Teter's claim is

straightforward under United States Supreme Court precedent, and it does not require the Court, impermissibly, to presume the content of the prior hearings of which the circuit court took judicial notice or reach the issue related to transcripts of Mr. Teter's prior hearings.

## Background

Mr. Teter, an inmate in the department of corrections, was charged with two felony offenses – the class A felony of kidnapping in the first degree and the class B felony of committing violence against an employee of the department of corrections. The range of punishment for those offenses was 10 to 30 years or life in prison and five to 15 years in prison, respectively.

Mr. Teter was initially represented on these charges by a public defender, but he filed a motion to represent himself. Among other things, his *pro se* motion stated:

> In State v. Teter, 14AC-CR02666 Teter was charged with murder in the first degree with the state seeking the death penalty. After two Feretta [sic] hearings, the Court granted Teter his motion to represent himself. The above entitled case is no where [sic] near as complex as the death penalty case mentioned … above. Teter has made multiple incourt [sic] appearances without any issues from him.

Mr. Teter appeared by video and with counsel at a hearing in January 2020, two weeks before trial. Because Mr. Teter's counsel had confirmed Mr. Teter did, in fact, want to proceed without an attorney, counsel requested that the court first proceed on Mr. Teter's motion to represent himself. In full, the circuit court's colloquy with Mr. Teter regarding his motion was as follows:

> THE COURT: Mr. Teter, is that your understanding as well, that you still want to represent yourself?
> MR. TETER: Yes, Your Honor.

2

THE COURT: All right. It's my understanding that you've had several times where you've gotten this far with the Court in Cole County and they were gonna -- they had hearings on it. Do you have me having -- Do you have any objection to me taking notice of those other hearings where they went through all those rights with you?

MR. TETER: No, Your Honor.

THE COURT: All right. I won't be having stand-by counsel for you; do you understand that?

MR. TETER: That is fine, Your Honor.

THE COURT: Okay. And additionally with your history and what you're in custody for, you will have very limited rights of moving around the courtroom; do you understand that?

MR. TETER: Yes, Your Honor, I understand that.

THE COURT: All right. I'm gonna go ahead and read these rights to you, and then we'll fax them over there. And if that's what you want to do, you might have to sign it later, but -- All right. I request that the Court allow my waiver of attorney with full understanding that I'm entitled to an attorney if I so desire and with full knowledge and understanding of the following additional considerations. The offenses charged are escape from confinement --

[PROSECUTOR]: There's two other charges.

THE COURT: -- I got them, yeah. -- committing violence against an employee of the Department of Corrections, and kidnapping in the first degree.[1] The range of punishment in those offenses would be -- for the kidnapping -- Would that be a 4-year sentence for that?

[PROSECUTOR]: No, Judge. I don't have it in front of me. I'm sorry.

THE COURT: Okay. He's a prior – He's got a prior offense. He's just charged as a prior.

[PROSECUTOR]: It's a Class A felony for kidnapping, Judge.

THE COURT: The Class A felony would be for -- for kidnapping would be from 10 to 30 or life, right?

[PROSECUTOR]: Yes.

THE COURT: Offering violence would be from 5 -- from 5 to 10?

[MR. TETER'S COUNSEL]: 15.

[PROSECUTOR]: 15.

THE COURT: 5 to 15? And then the Class E felony would be up to 4 years?

[PROSECUTOR]: Correct, Judge.

THE COURT: That you have the right to be represented by an attorney. And if indigent and unable to employ an attorney, I have a right to request the judge to appoint an attorney to assist me in defending against the charge. And the Court will appoint an attorney to assist me if it finds that I'm indigent and not

---

[1] The offense of escape from confinement was not charged when the state filed a substitute information in lieu of indictment.

3

able to employ one. That you have the right to a trial by jury with assistance of an attorney to confront and cross-examine witnesses. And a guilty plea waives any right to a trial. That I have the right to remain silent and not make any statement which may be used in the prosecution of the criminal charges filed against me. I am aware that any recommendation by the prosecutor is not binding on the judge who may accept or reject such recommendation. That if a guilty plea is entered, if I'm found guilty by trial of the charge, the judge is most likely to impose a sentence of confinement in jail or prison. That I've had the right to appeal the Court's decision or the jury's verdict should I exercise my right to trial by jury and be found guilty. The above rights have been read to me by the judge in open court. I understand these rights and request the Court to accept my waiver. Is that what you want to do today, sir?
MR. TETER: Yes, Your Honor.
THE COURT: All right. And, Mr. Teter, it's my understanding that you're familiar with the court system and that you don't have any mental prohibitions against you representing yourself.
MR. TETER: That's correct, Your Honor.
THE COURT: All right. All right. I'll discharge the public defender. And you're free to go, [Mr. Teter's counsel].

A waiver of counsel form complying with section 600.051.1[2] was signed by Mr. Teter and the judge and filed in the circuit court later that day.

Mr. Teter represented himself during the jury trial two weeks later, and the jury found him guilty of kidnapping and violence against a correctional officer. The circuit court sentenced him, as a prior offender, to a 30-year term of incarceration for the charge of kidnapping and a 10-year term of incarceration for the charge of violence against a correctional officer, with the sentences to run concurrently with each other but consecutively to his sentences in prior cases.

Mr. Teter appealed, with the assistance of counsel, and this Court granted transfer after an opinion by the court of appeals. Mo. Const. art. V, § 10. On appeal, Mr. Teter

---

[2] All citations to section 600.051 are to RSMo 2016.

claims the circuit court erred in allowing him to represent himself at trial without first ensuring his waiver of counsel was knowing, intelligent, and voluntary.

## Standard of Review

Mr. Teter acknowledges he did not raise the validity of his waiver of counsel at or before trial but claims the Court should nevertheless apply *de novo* review, citing *State v. Ndon*, 583 S.W.3d 145, 153 (Mo. App. 2016). The state notes the districts of the Missouri court of appeals are divided as to the proper standard of review but asserts "the ultimate outcome of this type of claim is the same under either *de novo* or plain error review."[3]

The state is correct. Even under plain error review, legal questions are reviewed *de novo*. *See, e.g.*, *State v. Hillman*, 417 S.W.3d 239, 246 (Mo. banc 2013). Review of the constitutional validity of a waiver of the right to counsel "requires application of constitutional principles to facts." *Thompson v. Keohane*, 516 U.S. 99, 112 (1995); *see also Brewer v. Williams*, 430 U.S. 387, 397 n.4, 403-04 (1977). Specifically, the circuit court record is examined to review the circumstances of the case and the individual defendant and to determine whether the court erred in applying the law to the facts in the record. Review of a circuit court's application of the law to the facts in the record is a question of law that is reviewed *de novo*. *Wilkins v. Bowersox*, 145 F.3d 1006, 1011 (8th Cir. 1998) (citing

---

[3] *Compare Ndon,* 583 S.W.3d at 153 (reviewing *de novo* an unpreserved claim that the circuit court erred in allowing the defendant to proceed *pro se*), *with State v. Sullivan*, 640 S.W.3d 149, 158-59 (Mo. App. 2022) (reviewing such an unpreserved claim for plain error).

*Brewer*, 430 U.S. at 403); *see Pearson v. Koster*, 367 S.W.3d 36, 44 (Mo. banc 2012) (holding this Court reviews *de novo* the application of law to given facts).[4]

Likewise, even under the manifest injustice standard of plain error review, the right to relief is not in question if the record demonstrates a defendant's waiver of counsel is not knowing and intelligent. Denying a defendant the right to counsel at trial requires reversal because it is structural error resulting in manifest injustice. "[I]f an indigent defendant is denied an attorney . . . , the resulting trial is always a fundamentally unfair one." *Weaver v. Massachusetts*, 137 S. Ct. 1899, 1908 (2017). A criminal defendant is entitled to relief under plain error review if the record of the proceedings in the circuit court fails to show the defendant's waiver was knowingly and intelligently made. *Sullivan*, 640 S.W.3d at 159.

**Record Shows Valid Waiver**

Review of Mr. Teter's challenge to the constitutional validity of his waiver of counsel is governed by the Supreme Court's and this Court's precedent. In *Von Moltke v. Gillies*,

---

[4] The legal principle that the application of law to given facts is a question of law does not rest on the particular facts or procedural postures of the cases. It is a principle that applies equally across varying causes of action, fact patterns, and procedural postures, and it applies here. *See, e.g.*, *United States v. Caldwell*, 954 F.2d 496, 504 (8th Cir. 1992) (reviewing on direct appeal whether waiver of the right to counsel occurred "as a question of law subject to de novo review"). The principle that the application of law to given facts is subject to *de novo* review, likewise, applies equally to civil and criminal cases, varying fact patterns, and different procedural postures. *See, e.g.*, *Adams v. Indus. Comm'n*, 490 S.W.2d 77, 79 (Mo. 1973) ("Insofar as the question is one of proper application of the law to the undisputed facts, the matter for review is one of law for the court."); *Breeze Invs., LLC v. Rockwell*, 644 S.W.3d 591, 596 (Mo. App. 2022); *Horton v. State*, 462 S.W.3d 770, 772 (Mo. App. 2015) ("The interpretation and application of a statute to a given set of facts is a question of law we review de novo[.]"); *United States v. Jones*, 275 F.3d 673, 678 (8th Cir. 2001) ("However, we review the court's application of law to those facts de novo."); *United States v. Hampton*, 260 F.3d 832, 837 (8th Cir. 2001) ("We review the district court's application of the law to the facts of Hampton's conduct de novo.").

332 U.S. 708, 723 (1948), the Supreme Court held a judge presiding over a criminal case bears a "serious and weighty responsibility" to determine whether a defendant has knowingly and intelligently waived the right to counsel. To make that determination against the backdrop of the strong presumption against waiver, "a judge must investigate as long and as thoroughly as the circumstances of the case before him [or her] demand." *Id.* at 723-24. Only "a penetrating and comprehensive examination of all the circumstances" can make certain a defendant's waiver is knowingly and intelligently made. *Id.* at 724. "[A] mere routine inquiry—the asking of several standard questions followed by the signing of a standard written waiver of counsel—may leave a judge entirely unaware of the facts essential to an informed decision that an accused has executed a valid waiver of his right to counsel[.]" *Id.*[5]

---

[5] The Supreme Court relied on *Von Moltke* in *Faretta* as analogous support for the principle that "to represent himself the accused must 'knowingly and intelligently' forgo" the "traditional benefits associated with the right to counsel." *Faretta v. California*, 422 U.S. 806, 835 (1975). Following *Faretta*, the Supreme Court again relied on *Von Moltke* in *Patterson v. Illinois*, 487 U.S. 285, 298 (1988), in which it cited both *Faretta* and *Von Moltke* as authority for the imposition of "the most rigorous restrictions on the information that must be conveyed to a defendant, and the procedures that must be observed, before permitting him to waive his right to counsel at trial." And this Court relied on *Von Moltke* for those principles following *Faretta*: "It is the duty of the trial judge initially to determine whether a knowing and intelligent wavier has been made, and the judge must investigate 'as long and as thoroughly as the circumstances of the case before him demand.'" *State v. Gilmore*, 697 S.W.2d 172, 174 (Mo. banc 1985) (quoting *Von Moltke*, 332 U.S. at 723-24). *Faretta* and *Von Moltke*, therefore, remain valid authority that circuit courts have a duty to ensure a defendant's waiver of counsel is knowingly and intelligently made and that circuit courts can ensure a knowing and intelligent waiver only after engaging in a comprehensive examination of the circumstances to assess how extensive a colloquy is necessary. *Faretta*, 422 U.S. at 835; *Von Moltke*; 332 U.S. at 723-24.

A defendant knowingly and intelligently waives the right to counsel only when the defendant is aware of the usefulness of counsel and the dangers and disadvantages of proceeding in the case *pro se*. *Faretta*, 422 U.S. at 835; *see Patterson*, 487 U.S. at 298. Moreover, "[t]o validly waive counsel, a defendant must actually understand all of the relevant considerations; thorough advice from the court alone is not sufficient." *Wilkins*, 145 F.3d at 1011. To guide circuit courts in conducting the constitutionally required penetrating and comprehensive examination of all the circumstances and assessing whether a waiver of the right to counsel is knowingly and intelligently made, this Court has articulated areas of inquiry "that should be explored on the record[.]" *State v. Black*, 223 S.W.3d 149, 155 (Mo. banc 2007).

> First, a trial court should inquire into the defendant's capacity to make an intelligent decision and his knowledge of his own situation. This does not mean that the defendant must be as legally competent as an attorney. Rather, the court should ensure that the defendant is not acting under duress, does not suffer from a mental incapacity, is literate and is minimally familiar with the trial process, including possible defenses to the crime charged, the different phases of trial, objection procedure and the elements of the crime charged.
>
> In addition to ensuring that the defendant is mentally competent and understands the nature of the proceedings, the court should also make certain that the defendant understands the possible penalties if convicted.
>
> Trial courts should also be sure that the defendant understands exactly what rights and privileges he is waiving, as well [as] the dangers associated with waiving constitutional rights. In this regard, the court should first ensure that the defendant understands that he has the right to counsel, including appointed counsel if he is indigent. If the defendant chooses to continue, the court should advise him generally that it is usually a mistake to proceed without a lawyer and then specifically warn him about the dangers and repercussions of that decision.

*Id.* at 156 (internal citations omitted).

On appeal, the state bears the burden to prove Mr. Teter's waiver was knowingly and intelligently made. *State v. Shafer*, 969 S.W.2d 719, 727 (Mo. banc 1998). If the record establishes the defendant knowingly and intelligently waived the right to counsel, the burden then shifts to the defendant to prove the waiver was unknowing or unintelligent. *Id.* at 727-28; *State v. Kunonga*, 490 S.W.3d 746, 765 (Mo. App. 2016). In deciding whether the state has met its burden, courts must indulge "every reasonable presumption against waiver." *Brewer*, 430 U.S. at 404. Presuming waiver from a silent record is impermissible. *Carnley v. Cochran*, 369 U.S. 506, 516 (1962).

A review of the transcript of the hearing on Mr. Teter's motion to represent himself, set out above, shows the circuit court read him the statutory waiver of counsel form, which informed him of many matters relevant to a voluntary and knowing waiver of counsel – his right to counsel and to a jury trial, the crimes with which he was charged, the range of punishment for those crimes, and the likelihood of confinement in jail or prison. The record also shows the circuit court took judicial notice of prior hearings on his motions to represent himself in separate criminal proceedings related to different charges. Although the circuit court referenced "taking notice of those other hearings where they went through all those rights with you," there are no transcripts, docket entries, or other memorializations in the records of those prior cases demonstrating what occurred during the hearings and whether Mr. Teter was advised of the dangers and disadvantages of his waiver of counsel. Therefore, there is no judicially noticed record that could have informed the circuit court – or this Court on appeal – whether Mr. Teter was previously made aware of the usefulness of counsel and

9

"the dangers and disadvantages of self-representation" as necessary for a knowing and intelligent waiver of counsel. *Faretta*, 422 U.S. at 835.

The judicially noticed records of the prior hearings, however, were evidence of Mr. Teter's prior experience as a criminal defendant. As Mr. Teter stated in his motion, he was charged with murder and the state sought the death penalty in Case No. 14AC-CR02666. The record shows, while his motion to represent himself was sustained, he represented himself, for only three weeks before the state filed a *nolle prosequi*, and, for a portion of that period, Mr. Teter had the benefit of standby counsel.

After the state dismissed the first case, Mr. Teter was reindicted and charged with murder in Case No. 16AC-CR000723. As in the first murder case, he sought to represent himself but the circuit court *overruled* his motions to proceed *pro se*, and Mr. Teter eventually entered a guilty plea. Mr. Teter never represented himself in the second case, and both cases were resolved without trial. The fact Mr. Teter represented himself for three weeks in a case dismissed before trial and, then, was a criminal defendant in the second case before entering a guilty plea are circumstances of which the circuit court properly took judicial notice. But the judicially noticed records provide no evidence he had any prior experience with criminal trials and, at best, show limited experience with the criminal justice system.

Although the court questioned Mr. Teter "about his familiarity with the court system and whether he had any mental prohibitions against representing himself, the circuit court's inquiry was limited to one question eliciting a "yes" or "no" answer. The circuit court asked: "Mr. Teter, it's my understanding that you're familiar with the court system and that you

10

don't have any mental prohibitions against you representing yourself." And Mr. Teter replied: "That's correct, Your Honor."

The circuit court's colloquy, the records of his prior criminal cases, and the standard waiver of counsel form are insufficient to show Mr. Teter was aware of the phases of trial, objection and trial procedures, the elements of the two felonies with which he was charged, and possible defenses to the crimes charged.[6] *See Black*, 223 S.W.3d at 156. Most importantly, the record shows the circuit court failed to advise Mr. Teter of the benefits of counsel or the dangers and disadvantages of proceeding *pro se*. *See Faretta*, 422 U.S. at 835. Specifically, the circuit court failed to warn Mr. Teter "generally that it is usually a mistake to proceed without a lawyer and then specifically warn him about the dangers and repercussions of that decision." *Black*, 223 S.W.3d at 156. Without "a penetrating and comprehensive examination of all the circumstances," *see Von Moltke*, 332 U.S. at 724, ensuring Mr. Teter understood the rights read to him and the benefits he would relinquish and disadvantages he would face, the colloquy, waiver form, and prior records fail to demonstrate he knowingly and intelligently waived his right to counsel.

As a result, if the circuit court's colloquy, the records of his prior criminal cases, and the standard waiver of counsel form were the only evidence in the record relating to whether Mr. Teter's waiver was knowing and intelligent, the state would fail to meet its burden of establishing a valid waiver. But circuit courts must warn defendants of the dangers of self-

---

[6] Consideration of Mr. Teter's familiarity with the phases of trial, objection and trial procedures, the elements of the two felonies with which he was charged, and possible defenses to the crimes charged is not an assessment of his competence to represent himself but, rather, of his awareness of the risks he would face at trial.

11

representation "not because the warnings are an end in themselves, but because they are a means to the end of ensuring defendants do not waive fundamental constitutional rights without an adequate understanding of the consequences of their choices." *Jones v. Walker*, 540 F.3d 1277, 1293 (11th Cir. 2008). Provided "a defendant knows the risks associated with self-representation, it is irrelevant for constitutional purposes whether his understanding comes from a colloquy with the trial court . . . or his own research or experience." *Id.* Accordingly, a defendant's "past contacts with the criminal justice system and his performance at the proceeding[s] at which he represented himself" inform whether he or she was aware of the benefits of counsel and the dangers and disadvantages of proceeding without counsel when he or she waived the right to counsel. *United States v. Armstrong*, 554 F.3d 1159, 1165 (8th Cir. 2009).[7]

In addition to Mr. Teter's previous experience with the criminal justice system, prior to his *Faretta* hearing in this case, Mr. Teter submitted many *pro se* motions, including a motion for speedy trial, for change of judge, for a legal assistant to sit at counsel table, and two motions in limine. Mr. Teter cited case law germane to the issues in his motions. Specifically, his motion for a legal assistant to sit at counsel table reveals he was aware of some of the difficulties he would encounter representing himself at trial. In that motion, he

---

[7] A majority of the federal appellate circuits consider a defendant's performance at the proceedings at which he represented himself, including trial, in assessing the nature of a defendant's waiver of the right to counsel. *See Jones*, 540 F.3d at 1295; *Ferguson v. Bruton*, 217 F.3d 983, 985 (8th Cir. 2000) (per curiam); *United States v. Taylor*, 113 F.3d 1136, 1142 (10th Cir. 1997); *Gov't of Virgin Islands v. James*, 934 F.2d 468, 474 (3d Cir. 1991); *United States v. Bell*, 901 F.2d 574, 578 (7th Cir. 1990); *McQueen v. Blackburn*, 755 F.2d 1174, 1178 (5th Cir. 1985); *United States v. Hafen*, 726 F.2d 21, 25 (1st Cir. 1984).

anticipated the need to hand exhibits to the circuit court and the jury and his inability to do so while restrained at counsel table.

After his motion to represent himself was sustained,[8] Mr. Teter filed other motions, including a motion not to wear restraints, in which he anticipated the prejudicial effect appearing in restraints would have on a jury. Additionally, Mr. Teter submitted his own voir dire questions, endorsed witnesses, and requested subpoenas for his witnesses from the circuit court. He also prevailed in objecting to the state's motion to disqualify one of his witnesses. And Mr. Teter submitted and agreed upon stipulations regarding evidentiary foundations for videos and written reports prior to trial with the state. He also inquired whether objections would be heard outside the jury's presence.

Reviewing the trial transcript, it is readily apparent that, among other things, Mr. Teter was familiar with trial procedures, including voir dire, opening and closing statements, the procedures for examining witnesses, introducing evidence, objecting to evidence, and publishing documents to the jury. Mr. Teter also successfully struck a venireperson for cause and struck venirepersons using peremptory challenges. Mr. Teter's opening statement included a discussion of the state's burden and an overview of his case. During the state's case-in-chief, Mr. Teter cross-examined the state's witnesses about

---

[8] The Court reviews Mr. Teter's conduct after his waiver of counsel, including his performance at trial, because it provides circumstantial evidence of what he knew at the time of his waiver. *See Jones*, 540 F.3d at 1295. The inferences to be drawn from such circumstantial evidence are particularly strong in this case because trial occurred two weeks after the *Faretta* hearing. His post-waiver conduct is otherwise irrelevant to determining whether he knowingly and intelligently waived the right to counsel. *Faretta*, 422 U.S. at 836.

weaknesses in the state's investigation and introduced evidence to impeach witnesses. During Mr. Teter's case-in-chief, he called six witnesses and introduced evidence. In his closing argument, he argued weaknesses in the state's case and that the state's failure to investigate certain matters led to reasonable doubt. As a result, notwithstanding the circuit court's failure to ascertain whether Mr. Teter was aware of the usefulness of counsel and the dangers and disadvantages of self-representation, the record as a whole, including Mr. Teter's background, experience, and conduct, in conjunction with the circuit court's colloquy, shows Mr. Teter knew the dangers and disadvantages he would face in proceeding to trial *pro se*.

Because the state carried its burden of establishing a knowing and intelligent waiver, the burden shifts to Mr. Teter to demonstrate from the record that his waiver was unknowing or unintelligent. *See Shafer*, 969 S.W.2d at 727-28. Mr. Teter fails to carry that burden because he focuses entirely on the record of the circuit court hearing and argues only that the hearing fails to demonstrate the circuit court warned him of the dangers and disadvantages of self-representation. While he is correct the hearing, alone, was insufficient to demonstrate his waiver was voluntary and knowing, the circuit court record contains other facts sufficient to demonstrate his waiver was voluntarily and knowingly made. Therefore, despite the circuit court failing to advise him of the benefits of counsel and warn him of the dangers of proceeding without counsel, for the reasons stated above, I agree with the principal opinion that the record, as a whole, demonstrates his waiver of counsel was knowing and intelligent.

14

Rather than undertake this straightforward analysis following the binding precedent of the Supreme Court and this Court, as cited in the principal opinion, it makes statements – rulings – that will misdirect Missouri judges and attorneys to misapply the law. The consequence of this misdirection is to deprive Mr. Teter of the protections in *Faretta* and the guidance in *Black*. Evidence Mr. Teter signed the statutory waiver of counsel form[9] and a hearing was held in which the circuit advised him of certain rights and took judicial notice of prior hearings for which there are no transcripts is not *prima facie* proof Mr. Teter understood the benefit of counsel and the dangers and disadvantages of self-representation – the essential requirements for a knowing and intelligent waiver. *Faretta*, 422 U.S. at 835; *Patterson*, 487 U.S. at 298.

It was proper for the circuit court to take judicial notice of the records of the previous hearings in prior cases, but it could take judicial notice only of the records as they existed at

---

[9] Compliance with the requirements of section 600.051 is insufficient to establish a knowing and intelligent waiver. *See Black*, 223 S.W.3d at 154; *State v. Floyd*, 635 S.W.3d 593, 597 n.4 (Mo. App. 2021). Section 600.051's mandated litany does not comport with the penetrating and comprehensive examination required to satisfy *Faretta*. *City of St. Peters v. Hodak*, 125 S.W.3d 892, 895 (Mo. App. 2004); *see also Kunonga*, 490 S.W.3d at 771. Under *Faretta*, a defendant can be found to have knowingly and intelligently waived counsel only when the record in the circuit court demonstrates the defendant was aware of the benefits of counsel and the dangers and disadvantages of self-representation. 422 U.S. at 835; *see also Black*, 223 S.W.3d at 156.

Because the standard waiver of counsel form signed by Mr. Teter and the judge – made available by the office of state courts administrator to aid circuit courts in complying with section 600.051.1 – conveys only the statutory information, it is, alone, insufficient to comply with the requirements of *Faretta*. Unfortunately, nothing in the text of the standard waiver of counsel form tells a defendant or judge that a knowing and intelligent waiver requires more than the rote recitation of the information in section 600.051.1; instead, the form indicates the contrary by including, after such recitation, an express finding by the court that "the defendant has made a knowledgeable and intelligent waiver of the right to assistance of counsel."

the time it took notice. Because there were no transcripts in the record at that time, any later-created transcripts of Mr. Teter's prior hearings were not judicially noticed. Without transcripts showing what occurred during Mr. Teter's prior hearings, docket entries, or other memorialization in the records of those cases, neither the circuit court nor this Court can know what rights had been explained to Mr. Teter in previous hearings. Therefore, the records of the previous hearings were silent as to whether the circuit court, during those hearings or at any other time in the prior cases, advised him of the benefit of counsel and the dangers and disadvantages of self-representation, which are essential to a knowing and intelligent waiver of counsel. A court cannot presume a valid waiver from a silent record. *Carnley*, 369 U.S. at 516. "The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver." *Id.*[10] And courts must indulge "every reasonable presumption *against* waiver." *Brewer*, 430 U.S. at 404 (emphasis added).

---

[10] *Faretta* impliedly affirmed *Carnley*, as it mandates a defendant "should be made aware of the dangers and disadvantages of self-representation, *so that the record will establish* that he knows what he is doing and his choice is made with eyes open." *Faretta*, 422 U.S. at 835 (emphasis added) (internal quotation omitted). Furthermore, courts in jurisdictions across the country have cited *Carnley* more than 300 times since *Faretta* was decided for its holding that "[p]resuming waiver from a silent record is impermissible," including a decision from the Eighth Circuit directly quoting that holding. *See United States v. Slipka*, 735 F.2d 1064, 1066 (8th Cir. 1984); *see, e.g.*, *Ayers v. Hall*, 900 F.3d 829, 835 (6th Cir. 2018); *United States v. Hamilton*, 391 F.3d 1066, 1071 (9th Cir. 2004); *Allen v. Thomas*, 161 F.3d 667, 670 (11th Cir. 1998); *United States v. Ming He*, 94 F.3d 782, 794 (2d Cir. 1996); *Singer v. Ct. of Common Pleas, Bucks Cnty., Pa.*, 879 F.2d 1203, 1210 (3d Cir. 1989); *United States v. Williamson*, 806 F.2d 216, 219 (10th Cir. 1986); *United States v. Martin-Trigona*, 684 F.2d 485, 491 (7th Cir. 1982).

16

The principal opinion notes the circuit court took judicial notice of "its own" prior hearings. But the judge presiding over this case in the circuit court did not preside over the prior cases that were judicially noticed and, if it were the same judge, presuming the circuit court had actual knowledge of matters not appearing in the record is impermissible. *Carnley*, 369 U.S. at 516. "It is well settled that a trial court's judgment cannot be based upon evidence which was not made part of the record." *Wood v. Wood*, 94 S.W.3d 397, 407 (Mo. App. 2003); *see also Anderson v. State*, 402 S.W.3d 86, 92 (Mo. banc 2013). Because the circuit court could base its ruling only on evidence that was made part of the record, this Court cannot presume the circuit court sought out or considered evidence outside the record in disregard of that requirement and in violation the code of judicial conduct. *See* Rule 2-2.9(C).

The principal opinion's misapplication of law causes it to shift the burden to Mr. Teter before the state establishes his waiver was knowing and intelligent. It is only after prematurely shifting the burden to Mr. Teter that the principal opinion examines the other facts in the record, discussed above, and finds the record, as a whole, demonstrates his waiver was knowing and intelligent.

Under the proper application of the law to the facts of this case, the state did not meet its burden of establishing a knowing and intelligent waiver by proof of a signed statutory waiver of counsel form and the fact the circuit court held a hearing in which it took judicial notice of Mr. Teter's prior hearings. It met its burden to demonstrate a knowing and intelligent waiver only when facts in the entire record are considered – including Mr. Teter's statutory waiver form; his motion; his background, experience, and trial conduct; and the

17

circuit court's colloquy – because the additional facts are necessary to show he was aware of the dangers and disadvantages of self-representation.

The principal opinion's analysis allows the state to meet its burden with evidence that fails to show Mr. Teter was aware of the benefit of counsel and dangers and disadvantages of proceeding *pro se*. This Court is compelled to follow the Supreme Court's controlling decisions,[11] and those decisions require the state to show on the circuit court's record that Mr. Teter was aware of the benefits of counsel and the dangers and disadvantages of self-representation to establish Mr. Teter knowingly and intelligently waived his Sixth Amendment right to counsel. *Faretta*, 422 U.S. at 835; *Patterson*, 487 U.S. at 298.

In addition, the principal opinion unnecessarily and erroneously holds Mr. Teter failed to file all the records, proceedings, and evidence necessary to determine the questions on appeal as required by Rule 81.12(a)-(c). It holds Mr. Teter "failed to develop a complete record" in that he did not "order[] the transcripts of the prior *Faretta* hearings referenced in his motion to represent himself and judicially noticed by the circuit court at the hearing on his motion to represent himself." As the principal opinion acknowledges in holding Mr. Teter should have ordered the preparation of transcripts, there were no transcripts of the prior *Faretta* hearings in the records of which the circuit court took judicial notice.

By finding Mr. Teter's claim is defeated because he did not file a complete record, the principal opinion misapplies the law and unfairly punishes Mr. Teter for failing to create

---

[11] U.S. Const. art. VI, cl. 2; *Kraus v. Bd. of Educ. of City of Jennings*, 492 S.W.2d 783, 784 (Mo. 1973) (holding this Court is bound by the Supreme Court's interpretations of federal constitutional law).

18

and file documents that were not in the circuit court record, which this Court has said could not properly be in the record on appeal because they were not in the circuit court record. *Bennett v. Rapid Am. Corp.*, 816 S.W.2d 677, 678-79 (Mo. banc 1991).[12] Mr. Teter had no obligation to develop matters outside the circuit court record for filing in the appellate record before this Court, and this Court, likewise, could not consider newly created transcripts because they were not made part of the record before the circuit court. *Id.*

## Conclusion

The state carried its burden to establish Mr. Teter knowingly and intelligently waived the right to counsel because it demonstrated, on the basis of the record as a whole, that he understood the benefits of counsel and the dangers and disadvantages of self-representation. The principal opinion's misapplications of the law are not necessary to reach that conclusion. Nevertheless, because the principal opinion reaches the correct result, I concur.

_____
PATRICIA BRECKENRIDGE, JUDGE

---

[12] In *Bennett*, the appellant sought to file material in the court of appeals, and in this Court after transfer, that was not before the circuit court. 816 S.W.2d at 678. This Court held: "The court of appeals, as do we, properly refused to review documents not weighed by the trial court because materials not considered by the trial court may not be considered on this appeal." *Id.* at 678-79. That principle is broadly applicable across causes of action, fact patterns, and procedural postures and is in no way confined to claims of error relating to personal jurisdiction over wrongful death claims, as the principal opinion seems to suggest.